## Case No. 9,457.

### MERCY v. OHIO.

[5 Chi. Leg. News, 351.]

Circuit Court, N. D. Illinois. March 12, 1873.[1]

RAILROAD COMPANIES—TOWN BONDS—SPECIAL ACT —ELECTION—IRREGULARITY IN.

1. The bona fide holder, for value paid, of coupons payable to bearer, issued by a town organized under the township organization law of Illinois, by virtue of a special act of the legislature empowering such town to vote subscription to the capital stock of a railroad company, is not bound to prove that every prerequisite has been complied with, in order to maintain his action.

2. A mere irregularity in the form, for example, of an election, called to vote for or against such subscription, does not constitute a good defense to a suit upon the bonds or coupons in the hands of a bona fide holder.

3. The plaintiff in this case has established a prima facie case, by showing the law, the vote, the acceptance by the company, the issuing of the bonds, and a compliance with the conditions upon which the vote was taken, though as to this last it was perhaps not necessary for the plaintiff in a case like this to prove such compliance.

4. It is not material under the statute in question that the application for the election should be formally addressed to the town clerk. The application was in fact received by him, and he acted upon it by giving the requisite notices for the election.

5. That the ordinary judges of election, the supervisor, assessor and collector, presided and canvassed the votes, instead of a moderator, if a defect at all, is but an irregularity, which does not render the election void, nor invalidate these securities in the hands of an innocent purchaser.

6. *Held*, that it is to be presumed that the persons authorized to vote under the terms of this act were legal voters, and not mere inhabitants.

7. That the subscription in question was not made until after the constitution of 1870 took effect, is not such unreasonable delay as will constitute a valid defense against an innocent holder of the bonds; the new constitution expressly permitting such subscription to be made, where there has been a prior vote.

8. The conditions of the vote in this case construed, and *held* to have been complied with.

9. Where bonds are placed in the hands of a third person to deliver upon the happening of certain things, and he delivers them irregularly or prematurely or contrary to instructions, and the bonds pass into the hands of bona fide purchasers without notice, the loss, if any, must fall upon the party who has so placed them in the hands of the third person, and not upon the purchaser.

[This was an action of assumpsit by George O. Mercy against the town of Ohio.]

Geo. O. Ide, of Paddock & Ide, for plaintiff.
M. T. Peters, for defendant.

DRUMMOND, Circuit Judge. On the 28th of Feb'y, 1867, the legislature incorporated the Illinois Grand Trunk Railway with power to build, maintain, and use a railway from some point or points on the Mississippi river, either at Rock Island, Fulton, or any other intermediate point or points to Prophetstown, Mendota, Newark, and the village of Lisbon, Grintown, and Joliet to Chicago, or to any desirable point on the Indiana state line. The road was to be built on or near the established line of the old Illinois Grand Trunk Railway, as nearly as might be practicable, from Prophetstown to Joliet, running through the places aforesaid. On the 25th of March, 1869, the legislature amended this act, and declared that "any city, incorporated town or township, which may be situated on or near the route of the Illinois Grand Trunk Railway, west of the city of Mendota, by the way of Prophetstown to the Mississippi river, may become subscribers to the stock of said railway, and may issue bonds for the amount of such stock so subscribed, with coupons for interest thereto attached, under such limitations and restrictions, and on such conditions as they may choose, and the directors of said company may approve—the proposition for said subscription having been first submitted to the inhabitants of such city, town or township, and approved by them." The amendment further provided that upon the application of ten voters, as aforesaid, specifying the amount to be subscribed and the conditions, it should be the duty of the clerk of the city, town or township, to call an election in the same manner that other elections for the city, town or township were called, for the purpose of determining whether the city, town or township would subscribe to the stock of the railway; and it provided that if

---

[1] [Affirmed in 18 Wall. (85 U. S.) 552.]

a majority of the voters should be for the subscription, then the corporate authorities of such city, town or township, and the supervisor and town clerk of such township should cause the subscription to be made, and upon its acceptance by the directors of the company, the bonds were to be issued in conformity with the vote, which bonds were to be of not less than one hundred dollars, and in no case to bear a higher rate of interest than ten per cent. Under these laws, bonds were issued by this town, and bore upon their face that they were issued under them, and they came into the hands of the plaintiff in good faith for value. Upon the coupons of these bonds this suit has been brought, and various objections have been made by the town to the recovery by the plaintiff in this case.

I suppose there can be no doubt that in a case like this it is necessary for the plaintiff to make out that the bonds were issued in pursuance of authority properly given to the town. This is claimed to be shown by the introduction of the law, and by showing that there was an application made, as required by the law, containing certain conditions; that there was a vote taken, and that the majority of the vote was in favor of the subscription; that it was accepted by the company, and the bonds issued in pursuance thereof, the conditions having been complied with. How far it is necessary for a bona fide holder of bonds or coupons issued in this way to establish in evidence before recovery, the conditions under which the bonds were to issue, is a question about which there has been a good deal of controversy in the courts—whether, in other words, it is incumbent on the bona fide holder of bonds or coupons to prove all the prerequisites, which the law required, prior to the issuing of the bonds. The courts have held uniformly in the construction of such laws, that it is not indispensable that every prerequisite should be shown, and they have further uniformly held that a mere irregularity in the form, for example, of an election, did not constitute a good defense to the suit for the bonds or coupons in the hands of the bona fide holder.

The first objection made is in relation to the authority, and my opinion is, that upon this question a prima facie case is made out when the plaintiff has shown what has been already stated—the law, the vote, the issuing of the bonds, the acceptance and compliance with the conditions upon which the vote was taken, though as to this last perhaps it was not necessary in such a case as this. One of the objections on the part of the town is, that there was no town election held. The facts are, that when the application was made by the number of voters required by the statute, and notice was given, the election seems to have been held by the ordinary judges of election, and not by the moderator, who ordinarily presides at mere town-meetings. The authorities of the town, or the persons whose advice was followed in this case, seem to have

thought that it being an election, the judges of election, as in state and county elections, should receive the votes; and they accordingly did receive, canvass and announce them. The supreme court of this state has decided that, in the absence of all language in a statute designating the particular manner in which an act shall be done by a town, the presumption is, it is to be done by the town as a town, or a township. The only organization that this town of Ohio had, was the township organization under the statute. The supreme court having held, that under a statute such as this, it was the duty of the township to have proceeded in a regular town-meeting manner, perhaps it would have been proper that the moderator should have received and canvassed these votes, rather than the judges of election. I do not see, as to one objection that is made, that the application is addressed to any particular person. I do not think that is material. The object of the law was that there should be an application made, and that the clerk should give the notice. The application is shown, and the clerk did give the notice, and there is no question made but that the notice was such a notice, and for such time as the law required.

There is further objection made as to the votes that were taken. It does not appear that there was any one who was desirous to vote, whose vote was rejected, and the presumption would be, I think, that legal voters were meant by the language of the law.

Another objection taken under this head, is as to this being an election to subscribe stock to the Illinois Grand Trunk Railway Company, when the corporation was the Illinois Grand Trunk Railway. I do not think that is a substantial objection. The application is in proper form, describing the corporation as the Illinois Grand Trunk Railway, and the notice seems to be so, and the bonds that were issued seem to be in the same form.

But the principal objection taken under this head is that which has been already referred to—the fact that the judges received and canvassed the votes, instead of the moderator; and the question is, whether that is, as against this plaintiff, a vital objection—one going to the foundation of the authority, so far as he is concerned, warranting the town, as to him, in saying, that the bonds were unauthorized because of this defect. My opinion is, that it has not that right, that it is simply an irregularity, and does not render the election (even conceding the correctness of the position taken by the defense) absolutely void, and the bonds in the hands of an innocent holder a nullity. The main thing in this election was to determine whether there was a majority of the voters in favor of the subscription, upon the conditions named. There is no dispute but that there was such a majority; and the fact that certain persons named as judges, by common

consent, received the votes, and canvassed them, is nothing more than an irregularity, which might render the election voidable, but does not render it a nullity when suit is brought upon the bonds in the hands of an innocent holder.

Another objection taken on the part of the defense is, that the proposition of the town to subscribe for the stock, was not accepted by the company until October, 1870, after the adoption of the new constitution of the state. The election was held on the 21st day of August, 1869, and it is contended that this was an unreasonable delay, and that the town was not bound by an acceptance of the company made after so long a time. the constitution of 1870 having prohibited municipalities from making subscriptions to the capital stock of railroad companies or private corporations. But the new constitution also provided that the adoption of the section prohibiting subscriptions in the future should not be construed to affect the rights of any municipality to make a subscription where the same had been authorized under a law already in force by a vote of the people prior to the adoption of the constitution. The only question, therefore, would be (this being within the letter and spirit of that provision of the constitution) whether there was an unreasonable delay, and I do not think that as against an innocent holder, the court can assume that there was such delay as to render the bonds void in his hands.

The next objection is one about which I have had considerable difficulty, under the language of the amendment of March, 1869, declaring, in case there is a majority of the voters in favor of a subscription, that the corporate authorities of the said city, town or township, and the supervisor or town clerk of the said township, shall cause the subscription to be made, and upon its acceptance by the directors of the company shall cause bonds to be issued in conformity with the vote. The bonds, in point of fact, were in this instance issued by the supervisor of the town, and the clerk, and the question here is, whether that is within this clause of the amendment; and it may be a question who are the corporate authorities within the meaning of this law. Of course, the words "supervisor" and "town clerk" of a township, could not both apply to a city; "said city, town or township, and the supervisor and town clerk of said township"—because, as we know, ordinarily, a supervisor is not an officer of a city. There must, therefore, be some limitation of this language, the "supervisor and town clerk of such a township," and after some hesitation I have come to the conclusion that the supervisor and town clerk are, within the meaning of this law, the corporate authorities who had the right to act, to cause the subscription to be made. and the bonds to be issued; and I think that has been generally the construction given to language similar to this, as used in statutes. I

find several cases where the supervisor and town clerk have issued the bonds under somewhat similar language to that which has been used here, and either no objection was made to the authority, or else it was overruled, if any was made. This is a question, I admit, not free from difficulty; but I have thought, in view of the decisions which have been made by the supreme court of the United States, in relation to bonds, with such recitals in the hands of bona fide holders for value, that the construction ought to be, in a matter of doubt like this, in favor of the holders of the bonds.

Another objection made is, that one of the conditions was not complied with—that the road was not completed, as required by the conditions of the vote. It seems to me that, as a matter of fact, that is hardly made out. But, on the contrary, I am inclined to think that the weight of the evidence shows that the road was completed within the fair meaning of the condition. One of the conditions was, that "the Grand Trunk Railway shall be completed, and the cars running thereon, for the purpose of carrying passengers and freight from Mendota through the town of Ohio." It can hardly be contended, I apprehend, that the whole of the road should be completed from the Mississippi to Chicago, or the state line, before the bonds could be issued within this condition, in view of the limitation made by the amendment itself to the towns that might subscribe, they being west of the city of Mendota.

Another objection made is, that these various conditions that were annexed to the application, and the notice of the vote, were not inserted in the bonds. The language is somewhat peculiar: "Said bonds to be issued and delivered only on this expressed condition, 'that the aforesaid Grand Trunk Railway,' etc., 'shall be completed.'" The construction sought to be given by the defense is, that these conditions should be "expressed" in the bonds—that is, inserted in the bonds, and it being conceded that they were not, that the issue was unauthorized and void. I hardly think that so rigid a construction as this ought to be given to this language. The word, to be sure, is "expressed." The language is not, however, "expressed in writing"—it is not that these conditions are to be inserted in the bonds. It would be a literal compliance with this language, if the conditions were expressed orally, when they were delivered. Anything may be expressed by word of mouth, as well as by writing, and as against an innocent holder, it seems to me that to sustain the objection would be a stringent construction of this language. The meaning of it was probably intended to be, simply, "upon the express condition," and it may be nothing but a mere clerical error, or an ungrammatical phrase. I am inclined to think, however, that had the intention been that the condition should be inserted in the bonds; and if that had been the meaning of the

signers to the application, that intention would have been stated a little differently.

There is nothing in another objection made that, by the terms of the election, no part of the principal and interest of the bonds or coupons was to become due until after five years from the issue. I do not think that a fair construction to be placed on the whole subject. On the contrary, I think the fair meaning would be, that coupons were intended to be payable before the principal of the bond was payable. The language of the amendment of March, 1869, was that bonds were to be issued, with coupons for interest attached. The language of the application is, that bonds might be issued, with interest payable at a particular time. One-fifth of the whole number were to be due in five years, and one-fifth in every succeeding year thereafter. Now I do not think it a reasonable construction of the law, the application, the notice, and the vote, to say that the interest of these bonds·was not to be payable until after the expiration of five years. On the contrary, it is apparent to every one that bonds of that character never could have been negotiated at all, and that the whole enterprise would necessarily have been a failure. This is only referred to for the purpose of putting a construction upon acts performed, and an unreasonable construction should never be placed upon acts like these.

Another objection is, that the Grand Trunk Railway was not organized when the election of August, 1869, took place. I do not think that that would render the election absolutely void. The company was not required to do any act until the election took place, and until they were called upon to make an acceptance of the subscription. It might possibly be a question whether it ever would be organized, unless the subscriptions were made as authorized.

The ninth and tenth objections as to the issuing of coupons, and the completion of the road, I have already considered.

As to the delivery of the bonds, the facts seem to be that the bonds were issued, and placed in the hands of a third party, with instructions to deliver them under certain circumstances, and he delivered them, as he supposed, in compliance with the instructions. Now, there may be a very serious question whether, when bonds are delivered ·in such a way as this, to a third party, and are by that third party turned over, and come into the hands of an innocent holder for value, the party so placing them in the third party's hands, should not, in case of any irregularity in relation to the matter, or of non-compliance with instructions, suffer the consequences of such irregularity, or non-compliance with instructions, and it seems to me that under the evidence in this case, and what is stated in the bonds, and as against this plaintiff, the defendant must, if there has been any non-compliance with regulations or instructions, suffer the consequences.

This disposes of all the objections, and I think that the plaintiff is entitled to recover the amount of the coupons sued on, with interest from the time the coupons ought to have been paid. The principles which are here stated are, I think, fairly deducible from the numerous decisions of the supreme court of the United States, upon the subject of municipal bonds in the hands of bona fide holders for value.

[The case was taken by the defendant, on a writ of error, to the supreme court, where the judgment of the circuit court was affirmed. 18 Wall. (85 U. S.) 552.]

---

MEREDITH (BANK OF NORTH AMERICA v.). See Case No. 893.

MEREDITH (CHOATE v.). See Case No. 2,-692.

MEREDITH (LEWIS v.). See Case No. 8,-328.

MEREDITH (SPEIGLE v.). See Case No. 13,227.

M E R I D E N BRITANNIA CO. (STRONG MANUF"G CO. v.). See Case No. 13,546.