THE PEOPLE *ex rel.* A. E. Woods, County Collector, Appellant, *vs.* JAMES A. GREEN, Appellee.

*Opinion filed October 16, 1914.*

1. TAXES—*returns of hard roads tax election must be canvassed by supervisor, assessor and collector.* While there is no provision in the Township Organization act or the Hard Roads act requiring the canvassing board designated in section 7 of article 7 of the Township Organization act to canvass the returns of an election on the proposition to levy a hard roads tax and to issue bonds for hard roads, yet it must be held that the legislature intended the returns to be canvassed by such board.

2. SAME—*failure of a proper canvassing board to canvass returns is not fatal to the tax.* If there is no question but that the vote of the people at a hard roads tax election was in favor of the proposition, the tax should not be defeated, on application for judgment and order of sale, because the returns were canvassed by the town clerk and a justice of the peace instead of by the proper canvassing board.

3. SAME—*what not a valid objection to bond tax.* It is not a valid objection to a hard roads bond tax that the highway commissioners did not hold a meeting to determine what action they should take in respect to presenting a petition to the supervisor of the town and did not make any record in relation thereto. (*People* v. *Gough*, 260 Ill. 542, followed.)

VICKERS, J., dissenting.

APPEAL from the County Court of Edgar county; the Hon. DAN V. DAYTON, Judge, presiding.

W. H. HICKMAN, State's Attorney, SHEPHERD & TROGDEN, and JAMES W. & EDWARD C. CRAIG, for appellant.

H. S. TANNER, F. C. VANSELLAR, W. S. LAMON, W. V. ARBUCKLE, and FRED RHOADS, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The collector of Edgar county applied to the county court of that county, at the June term, 1913, for judgment against the lands of James A. Green, appellee, for taxes alleged to be delinquent. Green filed objections, which were sustained. The People have prosecuted an appeal to this court from the order of the county court refusing judgment.

The taxes involved were levied for purpose of constructing hard roads in the town of Embarrass and for the payment of principal and interest on bonds issued to raise funds to build hard roads. The objections raised the question of authority in the commissioners of highways to levy these taxes, on the ground that the returns of the election at which was submitted the question of levying a tax for hard roads had never been canvassed by the officers designated by the statute for that purpose. The town of Embarrass has two voting precincts, and an election was held in each of these precincts to vote on a tax for hard road purposes. After the election was held returns were filed with the town clerk, and said returns were canvassed by him and one of the justices of the peace of said town. The proposition was by these officers declared carried.

Section 3 of the Hard Roads law provides (Hurd's Stat. 1911, p. 2036,) that "if a majority of all the ballots cast at said election shall be in favor of said special tax, then it shall be the duty of the commissioners of highways of the township * * *. to levy a tax in accordance

with said vote." Section 4*a* of that act, as amended in
1909, (Hurd's Stat. 1911, p. 2036,) provides that the re-
turns of the election shall be "made in the same manner
as other special town (or district) elections are now or
may hereafter be provided by law." This last is the only
portion of the act which might be construed as referring in
any way to the canvass of the returns, and only provides
how the returns shall be made and not how they shall be
canvassed. Section 7 of article 7 of the Township act
provides (Hurd's Stat. 1913, p. 2444,) that in organized
townships "the supervisor, together with the assessor and
collector, shall, within five days thereafter, meet and can-
vass said returns and declare the result of said election."
While this section does not refer specifically to canvassing
the returns as to propositions, in our judgment the legisla-
ture intended that the elections held under the Hard Roads
statute in counties under township organization should on
any question be canvassed by the same board as under the
law is required to canvass other township elections,—that
is, the supervisor, assessor and collector. The town clerk
and justice of the peace were therefore without authority
to act as a canvassing board or to declare the result of
this election.

Can this tax, as levied by the highway commissioners,
be questioned in this proceeding because the canvass was
not made by the proper officials? In considering the ques-
tion as to ascertaining the result in elections on questions
submitted for adoption or rejection by the electorate, the
usual rule seems to be that the votes are counted and the
returns made in the same manner as in other elections un-
less there is some provision to the contrary. The canvass-
ing of the votes by the wrong officers, however, is but a
mere irregularity. (5 McQuillin on Mun. Corp. sec. 2200.)
In a township election in this State where railroad bonds
had been voted and the ordinary judges of election had
canvassed the votes instead of the moderator of the town

meeting, it was held by the United States circuit court in
*Marcy* v. *Ohio,* 17 Fed. Cas. 64, that this was not vital;
that "the main thing in this election was to determine
whether there was a majority of the voters in favor of
the subscription upon the conditions named. There is no
dispute but that there was such a majority, and the fact
that certain persons named as judges by common consent
received the votes and canvassed them is nothing more
than an irregularity," etc. This decision was affirmed in
85 U. S. 552. The canvass of the returns or the certifi-
cate of election is merely *prima facie* evidence as to the
result. In a proper proceeding the authorities may go be-
hind the certificate or the canvass and ascertain the real
facts. The duties of the canvassing board are merely min-
isterial, and omissions or mistakes of that board can have
no controlling influence on the election. (15 Cyc. 382, 387,
and cases cited.) "The failure or refusal of the proper
officer to issue a certificate of election to a person duly
elected to an office cannot operate to deprive such person
of his rights. The certificate or commission is the best
but not the only evidence of an election, and if that be
refused secondary evidence is admissible." (McCrary on
Elections,—4th ed.—sec. 205.) It is not in the power
of election officials, by neglecting or refusing to give the
proper certificate, to defeat the will of the people, for the
ballots determine the election and not the certificate, and
the person chosen from whom the certificate is withheld
may nevertheless proceed to qualify and take possession of
the office unless opposed by a *de facto* incumbent. The
right to the office depends on the ballots and not on a
commission. (Cooley's Const. Lim.—7th ed.—934, 940;
*State* v. *Draper,* 50 Mo. 353.) The legality of the election
and the rights, powers and duties of the office do not de-
pend upon the fact of the declaration of the board of elec-
tions. "That declaration is proper and is the usual prac-
tice, but withholding it or neglecting causelessly or illegally

to make it will not prevent the installation in and invest-
ment with the office. The authority, rights and powers of
such officers are derived from the election and not from
the returns, which are the usual prescribed evidences of it."
(*People* v. *Kilduff,* 15 Ill. 492.)   In reaching the correct
results in proper proceedings in election matters very little
attention is paid to mere irregularities in the acts of elec-
tion officers which do not affect the real merits of the case.
If the statute expressly declares any particular act to be
essential to the validity of the election or that its omission
shall render the election void the courts must enforce the
provisions of such statute, but in cases where the statute
simply declares that certain things shall be done within a
particular time or in a particular manner and does not
declare that their performance is essential to the validity
of the election, then they will be regarded as mandatory
if they affect the actual merits of the case, but they will
be considered directory, only, and not vital to the election,
unless they are such, in themselves, as to change or render
doubtful the result.   (McCrary on Elections,—4th ed.—
secs. 221, 225, 227.)   The provisions of statutes which
control the "recording and return of the legal votes re-
ceived and the mode and manner of conducting the mere
details of the election are directory."   (McCrary on Elec-
tions,—4th ed.—sec. 228.)   In discussing the question of
the sufficiency of the returns in an election matter this
court has said:  "The question in all such cases should be,
whom did a majority of the qualified voters elect?  Forms
should be made subservient to this inquiry and should not
rule in opposition to substance.  A literal compliance with
prescribed forms is not required in any case if the spirit
of the law is not violated, and in all cases the intentions
of the voters, clearly ascertained, should govern."  (*Peo-
ple* v. *Hilliard,* 29 Ill. 413.)   This court has frequently
held that the provisions of the election statutes as to the
manner of conducting the details of an election are not

mandatory but directory, and that mere irregularities in the manner of proceeding, and which deprive no legal voter of his vote and do not change the result, will not vitiate an election. (*Ackerman* v. *Haenck*, 147 Ill. 514; *Behrensmeyer* v. *Kreitz*, 135 id. 591; *Hodge* v. *Linn*, 100 id. 397.) "While the legal safeguards which are thrown around the ballot must be faithfully observed by those who have been entrusted with their enforcement, yet, under the pretense of enforcing them, the will of the people as expressed at the polls is not to be defeated by mere technicalities." (*People* v. *Nordheim*, 99 Ill. 553; *People* v. *Ruyle*, 91 id. 525.) Ordinary citizens cannot be expected to observe every possible formality and the strict letter of the statutes concerning non-essentials. The success or failure of popular government in the end rests on the great mass of the citizens,—"the plain people." The canvassing and returns of votes are made in the hurry and excitement of election. The will of the people should not be defeated by useless forms or idle technicalities. When the result of the election has been fairly ascertained it should be given full effect. McCrary on Elections, (4th ed.) sec. 243; *People* v. *Chicago and Eastern Illinois Railroad Co.* 214 Ill. 190.

In this case the returns of the judges and clerks were produced in the trial court and are in the record. From this record there can be no question that "a majority of all the ballots cast at said election" were in favor of such tax. This seems to be conceded. The failure of the proper election officials to canvass the returns should not be permitted, in a proceeding of this kind, to defeat the will of the people as manifested at the election. This court has held that "any error or informality in the acts of the officers or proceedings for the levy of a legal tax, not affecting its substantial justice, is to be disregarded or amended," etc. *People* v. *Worley*, 260 Ill. 536.

It is argued, however, by counsel for appellee, that in the case just cited it was held that the election was illegal

because the ballot was not in proper form, and that the conclusion in that case sustains their position here. In this they are in error. In that case the defect in the ballot prevented the ascertaining of the will of the people, it being impossible to decide, from the form of the ballot, whether a person was voting for or against the borrowing of money. Section 191 of the Revenue act provides, among other things, "no error or informality in the proceedings of any of the officers connected with the assessment, levying or collecting of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof." (Hurd's Stat. 1913, p. 2058.) The defect complained of here is a mere irregularity which does not tend to thwart in any way the will of the people nor affect the substantial justice of the tax.

The further objection of counsel for appellee that the tax in question is void because road No. 1 described in the petition passed through an incorporated town is identical with an objection raised in *People* v. *Worley, supra,* and ruled on adversely to appellee's contention. Appellee argues that the conclusion in that case was incorrect. We see no reason to modify or change that conclusion.

Some of the objections made to the hard road tax were also interposed as to the bond tax, and the bond tax was also objected to on the ground that the highway commissioners did not hold a meeting to determine what action, if any, they should take in respect to presenting a petition to the supervisor of said town and did not make any record in relation thereto. This is the same objection that was made to a bond tax in the case of *People* v. *Gough,* 260 Ill. 542. It was there held that the objection was without merit.

The objections of appellee should have been overruled by the county court. The order of that court will therefore be reversed and the cause remanded, with directions

to the county court to overrule the objections and enter an order for judgment of sale.

*Reversed and remanded, with directions.*

Mr. JUSTICE VICKERS, dissenting.