NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                 Docket No. 79857--Agenda 12--May 1996.

           RONALD GEER, Appellee, v. ROBERT KADERA, Appellant.

                    Opinion filed September 19, 1996.

                                    

          JUSTICE McMORROW delivered the opinion of the court:

     We granted leave to appeal in this case (155 Ill. 2d R. 315)

in order to determine whether the circuit court is the proper forum

in which to bring a post-election challenge to a candidate's

nomination papers. We must also decide whether a canvassing board's

declaration of the results of an election precludes a circuit court

from later declaring the true winner in an election contest.

Alternatively, we are asked to determine whether a mandamus action

may lie against a canvassing board which, having discharged its

duties, has ceased to exist functus officio.

                                BACKGROUND

     On April 18, 1994, Ronald L. Geer filed a "Petition to

Contest" the election of Robert A. Kadera, Geer's sole opponent in

the March 15, 1994, general primary election. Geer sought a

judicial declaration that Kadera's election to the two-year term of

precinct 155 Lake County Republican committeeman was null and void.

Geer claimed, among other things, that Kadera was not legally

qualified to hold office because he did not reside within the

precinct as required by the Election Code. 10 ILCS 5/7--8(b) (West

1994). Specifically, Geer alleged that Kadera misrepresented his

place of residence as being 21990 6th Avenue, Lake Villa, Illinois,

in a sworn statement of candidacy filed on December 6, 1993. 10

ILCS 5/7--10 (West 1994). Geer did not notify election officials of

Kadera's misrepresentation, however, until the day after the

election.

     Geer further claimed that the Lake County canvassing board

improperly declared Kadera the winner of the election 21 days after

it previously announced that Geer had won. According to Geer, the

board originally convened on March 18, 1994, and proclaimed him the

winner even though he had received fewer votes than Kadera. Geer

later received a "Certificate of Election" from the Lake County

clerk's office which confirmed his election as Republican precinct

committeeman. Notwithstanding the issuance of the certificate, the

board subsequently reconvened on April 8, 1994, and declared Kadera

the winner. This subsequent declaration of Kadera as winner, Geer

asserted, was void ab initio because the board lacked statutory

authority to recanvass the votes more than seven days after the

election. 10 ILCS 5/22--1 (West 1994).

     Kadera moved to dismiss the action pursuant to section 2--619

of the Code of Civil Procedure. 735 ILCS 5/2--619 (West 1994). With

respect to the accusation that he had filed a fraudulent statement

of candidacy, Kadera admitted that he "incorrectly" stated that he

resided at 21990 6th Avenue. He argued, however, that pursuant to

the Election Code any objections to a candidate's qualifications,

including residency, must be brought before the proper election

authority within five business days after the last day for filing

the nomination papers. 10 ILCS 5/10--8 (West 1994). Relying on

section 10--8 of the Code, Kadera further claimed that, because

Geer failed to object within the time limits set forth in the Code,

he had waived any objection to Kadera's nomination papers,

including his compliance with the statutory residency requirements.

     In regard to the other charge, Kadera did not directly address

Geer's contention that the Lake County canvassing board improperly

recanvassed the votes more than seven days after the election.

Nevertheless, he noted that election contests are ordinarily

limited to a determination of the results of the election, i.e.,

the number of valid votes for each candidate, and that in this

case, the circuit court should only hear evidence limited to that

issue. In support of this argument, Kadera attached to his motion

to dismiss a certified copy of a computer printout of the election

returns. The printout indicated that Kadera received 102 votes

versus the 65 votes cast for Geer. Even so, next to Geer's total

was the following handwritten notation: "3/21/94   = winner per

SAO." Directly beneath that notation was another handwritten

notation, purportedly attested to by Lake County clerk and board

member Linda Hess, which states: "4/8/94 Kadera winner per States

Atty Office. LH."

     The circuit court of Lake County was then called upon to

resolve the following conundrum: Upon which candidate should the

office of Republican precinct committeeman fall: the candidate

armed with a certificate of election which he had received as the

result of being declared the winner by a state agency with no

authority to do so, but who otherwise lived in the proper

geographic territory, or the candidate embraced by nearly two-

thirds of the voters, but who admittedly did not reside among his

constituents? The circuit court, deciding in favor of the latter,

ruled as follows:

               "1) The canvassing board [sic] 1st official

          certification found Mr. Kadera having [the] highest

          number of votes for Prec. 155 Lake Villa.

               2) That the question of residency brought by Pet.

          Geer is not properly brought for the Ct. [sic]

          determination but is a matter to be decided by the

          Republican Central Committee.

               3) That [the] motion to take evidentiary evidence is

          denied, [the] facts not disputed & [the] documents

          unambiguous regarding [the] action of [the] canvassing

          board."

     On appeal, the appellate court affirmed the circuit court's

dismissal of the action, holding that the circuit court properly

found that Kadera had won the election by virtue of his having

received the greater number of votes. No. 2--95--0456 (unpublished

order under Supreme Court Rule 23). The appellate court further

concluded that an election contest was not the appropriate legal

vehicle for challenging a candidate's failure to comply with the

statutory residency requirement. Thus, the appellate court affirmed

the dismissal of the election contest.

     After rendering its decision on the merits and hence disposing

of the entire appeal, the appellate court then invited Geer to

pursue a common law writ of mandamus. In dicta, the appellate court

stated that, "[u]nder the circumstances of this case, [Geer] may

sue the Board to seek a writ of mandamus invalidating the election

of [Kadera]."

     Geer then filed a new and separate mandamus action against the

canvassing board, joining Kadera as a necessary party. Geer v. Lake

County Canvassing Board, No. 95--MR--368 (Cir. Ct. Lake County).

That complaint focused exclusively upon the fact that Kadera did

not reside within precinct 155. Consistent with the appellate

court's suggestion, Geer requested a writ of mandamus directing the

canvassing board to reconvene and invalidate Kadera's election.

     Meanwhile, in the case at bar, Kadera filed a petition for

leave to appeal before this court despite the appellate court's

affirmance of the circuit court's order dismissing Geer's election

contest in toto. Not surprisingly, Kadera did not seek review of

the appellate court's favorable judgment; instead, he sought a

reversal of what he described as the appellate court's "ruling"

that a writ of mandamus may lie against the Lake County canvassing

board. Among other things, Kadera pointed out that the canvassing

board had performed all of its functions in 1994, and therefore no

longer exists. He further noted that this court has previously held

that a writ of mandamus will not issue against a defunct canvassing

board. People ex rel. Wilson v. Mottinger, 212 Ill. 530 (1904).

Accordingly, Kadera requests this court to reverse that portion of

the appellate court's ruling regarding the filing of a mandamus

action.

     Geer, on the other hand, did not respond to Kadera's petition

for leave to appeal, but filed a brief seeking cross-relief. 155

Ill. 2d R. 315(g). In his petition, Geer likewise relied on

Mottinger, arguing that "[i]f this Court lacked the power to

reconvene a canvassing board after it had performed its duty--

rightly or wrongly *** then certainly such a board had no power to

reconvene sua sponte three weeks after it had disbanded." Geer

seeks a reversal of the judgment of the appellate court, but not

its ruling regarding the propriety of the mandamus action.

                                 ANALYSIS

     It is against this backdrop that we must decide the

substantive issues in this case, however obfuscated they may have

become. Originally, the parties asked the circuit court to decide

whether a candidate who misrepresented his residency may

nevertheless hold office because his fraud went undetected until it

was too late. They also called upon the court to determine whether

that same candidate was properly declared the winner of the

election in the first instance.

     In addition to resolving those two questions, we are asked to

determine whether a writ of mandamus may issue in another case

pending before another tribunal involving another party not even

before this court. Geer v. Lake County Canvassing Board, No. 95--

MR--368 (Cir. Ct. Lake County). That issue arises in a case which

is technically moot.

      Thus, what began as a simple election contest--in what should

have been but a single visit to the courthouse--has evolved into

two separate proceedings. With these prefatory remarks, we begin

our analysis with an overview of the relevant portions of the Code.

10 ILCS 5/1--1 et seq. (West 1994).

                          Residency Requirements

     Section 7--10 of the Election Code mandates that a nomination

petition for the office of precinct committeeman must be filed on

behalf of each candidate. 10 ILCS 5/7--10 (West 1994). It also

requires that each petition must include a sworn statement of

candidacy which "shall set out the address of such candidate." 10

ILCS 5/7--10 (West 1994). The petition must further "state that the

candidate *** is qualified for the office specified." 10 ILCS 5/7--

10 (West 1994). In order to be qualified for this particular

office, the Code elsewhere provides that "[e]ach candidate for

precinct committeeman must be a bona fide resident of the precinct

where he seeks to be elected." 10 ILCS 5/7--8(b) (West 1994). The

purpose of these and similar provisions is to ensure an orderly

procedure in which only the names of qualified persons are placed

on the ballot. Lewis v. Dunne, 63 Ill. 2d 48 (1976).

     Elections are quintessentially political in nature, and

disputes are not uncommon. With that in mind, the General Assembly

saw fit to establish an expedient, pre-election mechanism for

resolving any disputes relating to a candidate's nomination papers.

Beginning with section 10--8, the Code requires all objections to

a candidate's nomination papers to be filed no later than five

business days after the last day for the filing of nomination

papers in general. 10 ILCS 5/10--8 (West 1994). The provision also

indicates that the nomination papers will be "deemed to be valid"

in the absence of a timely objection. 10 ILCS 5/10--8 (West 1994).

Section 10--8 states:

               "Certificates of nomination and nomination papers

          *** being filed as required by this Code, and being in

          apparent conformity with the provisions of this Act,

          shall be deemed to be valid unless objection thereto is

          duly made in writing within 5 business days after the

          last day for filing the certificate of nomination or

          nomination papers ***." 10 ILCS 5/10--8 (West 1994).

The Code further creates various electoral boards to resolve the

disputes (10 ILCS 5/10--9 (West 1994)), grants those same boards

the power to administer oaths, issue subpoenas and examine

witnesses (10 ILCS 5/10--10 (West 1994)), and provides a party with

judicial review (10 ILCS 5/10--10.1 (West 1994)). The failure to

utilize these procedures will result in a waiver of the objection.

See generally Swiney v. Peden, 306 Ill. 131 (1922).

     It is undisputed that in this case Geer did not file an

objection with the appropriate electoral board until the day after

the election. By that time Kadera's nomination papers were already

"deemed valid" by operation of section 10--8, and the board no

longer possessed any statutory authority to entertain Geer's

objection. Moreover, Geer could not resuscitate his objection in

the circuit court of Lake County under the guise of an election

contest. A circuit court does not have original jurisdiction over

objections to nomination papers. Dilcher v. Schorik, 207 Ill. 528

(1904). Indeed, the granting of judicial review under section 10--

10.1 of the Code was never intended to vest the circuit courts with

jurisdiction to conduct a de novo hearing into the validity of a

candidate's nomination papers. Williams v. Butler, 35 Ill. App. 3d

532 (1976); Wiseman v. Elward, 5 Ill. App. 3d 249 (1972). It is the

electoral board, and not the courts, which have been vested with

original jurisdiction to hear such disputes. Swiney v. Peden, 306

Ill. 131 (1922); People ex rel. Klingelmueller v. Haas, 111 Ill.

App. 3d 88 (1982).

     This conclusion is supported by Dilcher v. Schorik, 207 Ill.

528 (1904). In that case, the petitioner filed a statutory election

contest in the circuit court of Cook County challenging his

opponent's election as town constable. The petition did not contest

the appellee's election per se, but only the regularity of his

nomination and his eligibility to hold office. With respect to the

latter issue, the appellant claimed that his opponent was

ineligible because he did not reside within the town limits for a

period of one year prior to the day of the election. Citing section

10 of the Ballot Law--which provides that certificates of

nomination and nomination papers shall be deemed valid if not

objected to--this court affirmed the order of the circuit court

dismissing the action. This court concluded that the circuit court

did not have jurisdiction over the validity of the nomination

papers, a question properly reserved for the appropriate election

authority. Dilcher, 207 Ill. at 529; see also Swiney v. Peden, 306

Ill. 131 (1922) (holding that a failure to file objection to

nomination papers before board waives objection which cannot be

raised again in election contest).

     This court reached its decision in Dilcher even though the

Ballot Law at that time did not provide for any judicial review.

Our holding that the circuit court does not have subject matter

jurisdiction to conduct a de novo hearing into any controversies

concerning irregularities in a candidate's nomination papers has

been made easier by the 1967 amendments to the Code. Under the

amendments, the circuit courts were expressly granted only limited

jurisdiction to review decisions of the electoral board. 10 ILCS

5/10--10.1 (West 1994). Thus, by legislative fiat, a court's

inquiry into discrepancies in nomination papers is limited to a

"review" of the board's record. Wiseman v. Elward, 5 Ill. App. 3d

249 (1972).

     In this case, we see no reason to depart from this court's

prior holdings in Dilcher and Swiney. Compliance with the dispute

resolution procedures contained in article 10 of the Code is

essential to an orderly pre-election process. Prompt resolution

ensures that ample time remains for the preparation of ballots

listing only the names of qualified candidates. As explained in

Thurston v. State Board of Elections, 76 Ill. 2d 385, 389 (1979),

"[i]t is vitally important that nomination objections be resolved

at the earliest possible time." That is one of the primary reasons

why the legislature created the various electoral boards and vested

them, and not the courts, with original jurisdiction over issues

pertaining to nomination papers. It would be wholly improper,

therefore, for this or any other court to undertake its own fact-

finding mission under the circumstances presented here.

     We conclude, as this court has in the past, that a person once

elected cannot not be removed from office vis-a-vis a statutory

election contest merely because of a deficiency in his or her

nomination papers. Objections to certificates of nomination and

nomination papers are, in effect, dissolved by the general

election. Thurston, 76 Ill. 2d at 389 (citing Welsh v. Shumway, 232

Ill. 54 (1907), Schuler v. Hogan, 168 Ill. 369 (1897), and People

ex rel. Elder v. Quilici, 309 Ill. App. 466 (1941)).

     We caution that our holding not be expanded beyond the facts

presented for our review. We determine only that the failure to

file a timely, pre-election objection to a candidate's nomination

papers results in those papers being deemed valid by virtue of

section 10--8 (10 ILCS 5/10--8 (West 1994)). A person cannot

thereafter revive such an objection in the circuit court by means

of an election contest. However, because a person's nomination

papers may be deemed valid does not mean that person automatically

becomes eligible to hold a particular office. Unlike a candidate's

nomination papers, a person's eligibility to hold office may be

challenged at any time during the term of that office. Indeed, an

objection which relates to a person's eligibility, such as a

residency requirement, may be presented for judicial review under

appropriate circumstances. Greenwood v. Murphy, 131 Ill. 604 (1890)

(quo warranto); Dilcher v. Schorik, 207 Ill. 528 (1904); Edgcomb v.

Wylie, 248 Ill. 602 (1911); Swiney v. Peden, 306 Ill. 131 (1922);

Wagler v. Stoecker, 393 Ill. 560 (1946); see also People ex rel.

Henderson v. Redfern, 48 Ill. App. 2d 100 (1964); Breslin v.

Warren, 45 Ill. App. 3d 450 (1977); City of Highwood v. Obenberger,

238 Ill. App. 3d 1066 (1992). Today's decision leaves undisturbed

that body of law which permits such post-election challenges to a

person's right to hold office.

     Accordingly, because Geer did not file an objection before the

appropriate electoral board within the time limits set forth in the

Code (10 ILCS 5/10--8 (West 1994)), we affirm that portion of the

circuit court's order dismissing Geer's statutory election contest

as it relates to Kadera's nomination papers.

                             Canvass of Votes

     It is for an entirely different reason that we must also

reject Geer's contention that the circuit court erred in declaring

Kadera the winner of the election. As previously noted, Geer

claimed that (1) the Lake County clerk's office issued him a

certificate of election; and (2) the canvassing board improperly

reconvened more than seven days after the election. 10 ILCS 5/22--1

(West 1994).

     With respect to the issuance of the certificate, it is well

settled that "the certificate of election is merely prima facie

evidence as to the result. In a proper proceeding the authorities

may go behind the certificate *** and ascertain the real facts."

People ex rel. Woods v. Green, 265 Ill. 39, 42 (1914). Because

issuing a certificate of election is not a discretionary function,

but a ministerial task, any error or mistake on the part of the

clerk's office cannot have a binding effect on the outcome of the

election. "[The] right to the office depends on the ballots and not

on a commission." Green, 265 Ill. at 42. Consequently, the fact

that Geer may have received a certificate of election,

inadvertently or otherwise, does not automatically foreclose a

court from inquiring into the "real facts" and determining which

candidate received the highest number of votes.

     Geer next cites section 22--1 of the Code in support of his

argument that the canvassing board lacked statutory authority to

reconvene more than seven days after the election. 10 ILCS 5/22--1

(West 1994). That section, however, does not apply to this case.

Section 22--1 states in relevant part:

               "Within 7 days after the close of the election at

          which candidates FOR OFFICES HEREINAFTER NAMED IN THIS

          SECTION are voted upon, the county clerks of the

          respective counties, with the assistance of the chairmen

          of the county central committees of the Republican and

          Democratic parties of the county, shall open the returns

          and make abstracts of the votes on a separate sheet ***."

          (Emphasis added.) 10 ILCS 5/22--1 (West 1994).

Of the 17 offices thereafter enumerated, the office of precinct

committeeman is noticeably absent. Thus, by its terms, section 22--

1 does not advance Geer's argument that the canvassing board

impermissibly declared Kadera the winner.

     Even if the canvassing board lacked statutory authority to

reconvene, any irregularities in that regard became irrelevant

after Geer filed his election contest. That is because such a

contest looks beyond the actions of the canvassing board and

determines for itself which candidate received the greatest number

of votes. See generally Mayes v. City of Albion, 374 Ill. 605, 609

(1940).

     It is true that canvassing boards, as creatures of statute,

derive their powers solely from a legislative grant of authority.

As such, the canvassing board here had no inherent authority to

reconvene after having fully discharged its duties. Donahoe v.

Owens, 277 Ill. 318 (1917); People ex rel. Wilson v. Mottinger, 212

Ill. 530 (1904). Nevertheless, as noted in connection with the

clerk's issuance of a certificate of election, the "duties of the

canvassing board are merely ministerial, and omissions or mistakes

of that board can have no controlling influence on the election."

People ex rel. Woods v. Green, 265 Ill. 39, 42 (1914); see also

Wells v. Robertson, 277 Ill. 534, 539 (1917) (describing board's

function as a "mere mechanical or mathematical duty" in which votes

are computed and results declared).

      Concomitantly, the board's acts or mistakes, including its

ultra vires act of reconvening 21 days after the election, have no

bearing on the outcome of the election contest. "Repeated decisions

have firmly established the rule that the purpose of an election

contest is to ascertain how many votes were cast for or against a

candidate, or for or against a measure, and thereby ascertain and

render effective the will of the people." Wagler v. Stoecker, 393

Ill. 560, 562 (1946). The unauthorized acts of a canvassing board

cannot disenfranchise the electorate of its vote. To hold otherwise

would allow the will of the people to be defeated if a ministerial

office erred in carrying out its charge.

     In this case, the circuit court found that Kadera had received

the highest number of votes. Geer does not dispute that Kadera

received 102 out of the 167 votes cast. Consequently, under both

section 7--8(b) of the Code, which provides that the candidate

"having the highest number of votes shall be such precinct

committeeman of such party for such precinct" (10 ILCS 5/7--8(b)

(West 1994)), and section 7--59, which also states that the "person

receiving the highest number of votes of his party for precinct

committeeman of his precinct shall be declared elected precinct

committeeman from said precinct" (10 ILCS 5/7--59 (West 1994)), the

circuit court correctly declared Kadera the winner of the election.

     Our conclusion in this matter is based upon inveterate

principles of Illinois election law. Long ago this court observed

in People ex rel. Fuller v. Hilliard, 29 Ill. 413, 425 (1862), that

the "question in all such cases should be, whom did a majority of

the qualified voters elect? Forms should be made subservient to

this inquiry, and should not rule in opposition to substance."

Since that time, this court has adhered to that principle. See

MacGuidwin v. South Park Commissioners, 333 Ill. 58, 72 (1928);

Mayes v. City of Albion, 374 Ill. 605, 609 (1940); Wagler v.

Stoecker, 393 Ill. 560, 562 (1946). We do not depart from that

principle today. Accordingly, we affirm the order of the circuit

court dismissing Geer's election contest.

                              Mandamus Action

     We next turn our attention to the question of whether we may,

as Kadera requests, reverse the appellate court's "ruling" that a

writ of mandamus may lie against the canvassing board. As

previously discussed, Kadera successfully obtained a dismissal of

Geer's election contest in the circuit court of Lake County. On

appeal, the appellate court agreed with Kadera and affirmed the

circuit court's order. However, the appellate court intimated in

dicta that a mandamus action may lie against the canvassing board.

     It is upon that dicta that Kadera now appeals to this court.

We believe, however, that Kadera's request for a reversal of the

appellate court's dicta is not properly before this court, and for

the reasons which follow, we dismiss this portion of the appeal.

     As a general rule, "[a] party cannot complain of error which

does not prejudicially affect it, and one who has obtained by

judgment all that has been asked for in the trial court cannot

appeal from the judgment." Material Service Corp. v. Department of

Revenue, 98 Ill. 2d 382, 386 (1983). In addition, "[i]t is

fundamental that the forum of courts of appeal should not be

afforded to successful parties who may not agree with the reasons,

conclusion or findings below." Illinois Bell Telephone Co. v.

Illinois Commerce Comm'n, 414 Ill. 275, 282-83 (1953); see also N-

Ren Corp. v. Illinois Commerce Comm'n, 98 Ill. App. 3d 1076, 1078

(1981) (citing New York Telephone Co. v. Maltbie, 291 U.S. 645, 78

L. Ed. 1041, 54 S. Ct. 443 (1934), and Lindheimer v. Illinois Bell

Telephone Co., 292 U.S. 151, 78 L. Ed. 1182, 54 S. Ct. 658 (1934)).

Nor should such forums be afforded to one who merely disagrees with

the dicta of a lower court, but not its judgment.

     In the case at bar, Kadera obtained from the circuit court all

of the relief which he sought, i.e., dismissal of Geer's election

contest in toto. He triumphed again upon Geer's appeal. The

appellate court, in its judgment, affirmed the order of the circuit

court dismissing the election contest. Consequently, Kadera had no

standing to appeal to this court, having obtained by judgment all

that he asked for, both in the circuit court and in the appellate

court. Material Service Corp. v. Department of Revenue, 98 Ill. 2d

382, 385 (1983). It is the appellate court's judgment, and not its

dicta, that is before us on review.

     The fact that the appellate court may have suggested in dicta

that an alternative remedy might exist did not ipso facto create an

appealable interest. Dicta is not binding authority under the rule

of stare decisis. Wilson v. The Hoffman Group, Inc., 131 Ill. 2d

308, 324 (1989). As a result, the appellate court's comments as to

the availability of a writ of mandamus can have no effect upon the

action pending in the circuit court.

     We also note that the complaint that actually joins the

mandamus issue is currently pending before another tribunal and

involves another party which is not a litigant before this court,

i.e., the Lake County canvassing board. Geer v. Lake County

Canvassing Board, No. 95--MR--368 (Cir. Ct. Lake County). We have

no jurisdiction over that case. Further, Kadera is asking this

court, and not the circuit court where the matter is pending, to

decide whether the mandamus complaint states a cause of action. As

a court of review, we will not rule on a motion to dismiss a

complaint that is pending in the trial court.

     Accordingly, we dismiss that portion of the appeal relating to

the mandamus issue.

                                CONCLUSION

     Kadera's admittedly "incorrect" representation of his

residency has so far remained insulated from judicial redress. That

the law abhors a fraud is a truism which requires no citation to

authority. That the law will not tolerate an intruder's usurpation

of office by means of a misrepresentation is an equally venerable

proposition. Today, in affirming the judgment below, we do not

place our imprimatur upon Kadera's actions. We merely decide those

issues which are properly before us for review.

     For the foregoing reasons, the judgment of the appellate court

is affirmed.

Appellate court judgment affirmed.