THOMAS D. WILCOXON

*v.*

MITCHELL H. WILCOXON *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 4, 1907.*

1. LACHES—*equitable doctrine against the enforcement of stale claims is not a rule of pleading.* There is no difference, in the application of the equitable doctrine of *laches,* whether it is interposed against relief sought by an original bill or by a cross-bill.

2. SAME—*unexcused absence of reasonable diligence is fatal to recovery.* Nothing can call a court of equity into activity but conscience, good faith and reasonable diligence in applying for relief, and the absence of any one of such elements is fatal to a recovery.

3. SAME—*a cross-bill must show reasonable diligence.* A cross-bill to obtain affirmative relief must show a state of facts upon which a court of equity could be called upon to act if the same grounds were presented in an original bill, and if the cross-bill shows an unexcused delay for nearly fifteen years in applying for relief, after knowledge of the facts, the relief must be denied.

HAND, C. J., and CARTWRIGHT and SCOTT, JJ., dissenting.

APPEAL from the Circuit Court of Stephenson county; the Hon. O. E. HEARD, Judge, presiding.

In 1879 Thompson Wilcoxon was the owner of the Wilcoxon Opera House block and the Post-office block, in the city of Freeport. These properties were of the approximate value of $50,000 and were encumbered for $25,000. On the 19th of August, 1879, he, with his .wife, Cyinde Wilcoxon, entered into articles of agreement with their children, Thomas Wilcoxon, Mitchell H. Wilcoxon, Mary D. Proc-

tor and Martha E. Lemon. The agreement was in the nature of a lease, by which Thompson Wilcoxon and his wife leased the said real estate to their children from that date until June 1, 1884, a period of about five years. There was a covenant in the lease on the part of the lessees by which they agreed "to assume all of the indebtedness now existing against the estate of said parties of the first part, together with such additional indebtedness as shall be incurred in the erection and completion of said Post-office block, to the extent of all the revenues arising from the rental of said buildings (except as herein provided) during the term of said lease," and it was provided in the lease that after retaining out of the income of said properties a sum not exceeding $300 for each of the lessees per year, the lessees would apply the remainder of said income on payment of the principal sum of the indebtedness against the property, less taxes, interest, insurance and expenses. There were other covenants and agreements in the lease which it is not necessary to notice here. On the same date appellant and appellees entered into an agreement by which they formed a partnership for the purpose of managing the property leased from their father. By the terms of this agreement appellant was constituted trustee and agent for the partnership, and was authorized to lease the premises, pay all the expenses mentioned in the lease, together with the sum of $300 each to the partners, and to pay out the funds remaining in his hands upon the principal of the indebtedness on said property. He was also required to keep accurate accounts of his acts and doings and to make reports of the same to the other parties to the lease. For his services as such manager he was to receive the sum of $200 per year in excess of the $300 above mentioned. The partnership agreement provided that it should remain in full force for the period of five years from its date, unless otherwise ordered by the parties. Afterwards, on the 26th day of August, 1880, a supplemental agreement was entered into

between the parties to the partnership agreement, which provided that in view of the fact that their father, Thompson Wilcoxon, had ceased to receive certain income which he enjoyed at the time the lease was made, he should be paid $100 per month out of the general fund arising from the rental of the properties held by said parties under the lease above mentioned, and in case of the death of Thompson Wilcoxon the said sum was to be paid monthly to his widow. The expressed purpose of the lease and the partnership agreement was to reduce and pay off the indebtedness of Thompson Wilcoxon as rapidly as possible, and not to secure to the lessees an income for their immediate use except $300 per year to each of them, since they were equally interested, as prospective heirs, in relieving their father's estate of its burden of indebtedness. Appellant immediately entered upon the discharge of his duties as trustee under the partnership agreement.

In the year 1852 Thompson Wilcoxon made his will and devised all his property, without qualification, to his wife. In the same year Abigail M. Wilcoxon, aunt of appellant and appellees, who was the owner of 480 acres of land in Stephenson county, with other property, made her will devising her estate to Thompson Wilcoxon. On June 19, 1880, Abigail Wilcoxon added a codicil to her will, devising to Thomas Wilcoxon a life estate in her estate with remainder in fee to his sons. On January 3, 1881, Thompson Wilcoxon added a codicil to his will, to the effect that in case he should not pre-decease his wife his property should be divided equally among his children, with the further condition that if Abigail M. Wilcoxon should change her will, making any of his children or their heirs beneficiaries instead of Thompson Wilcoxon, then an amount equal to that received by such child from the estate of Abigail Wilcoxon should be deducted from the child's interest in the estate of the testator, and if the amount so received by such child from Abigail M. Wilcoxon's estate should equal or

exceed one-fourth of the total valuation of the aggregate amount of both estates, then such child, or his or her heirs, should receive no part of the estate of the testator.

On June 20, 1881, Thompson Wilcoxon and Cyinde Wilcoxon, his wife, executed a warranty deed conveying the Opera House and Post-office blocks to appellees. Appellant insists that he had no knowledge of the execution of this deed, and he continued to discharge his duties as manager of the affairs of the partnership. Upon the expiration of the lease, June 1, 1884, it was by mutual consent continued from year to year until the death of Thompson Wilcoxon, on December 17, 1887. On December 27, 1887, at a meeting of the heirs of Thompson Wilcoxon, appellant was apprised of the existence of the deed to appellees, and this he claims was his first information in regard to it. On December 30, 1887, Abigail M. Wilcoxon deeded to appellant the 480 acres of land in Stephenson county, reserving to herself a life estate in the same. Appellant continued to manage the opera house and the post-office property until March 1, 1888, when he refused to further act in such capacity, but he continued to occupy an office in the building.

January 24, 1889, appellant filed his bill in the circuit court of Stephenson county to set aside the deed by Thompson Wilcoxon and wife to appellees, dated June 20, 1881, and to annul the codicil to the will of Thompson Wilcoxon, which was executed January 3, 1881, and to set aside the probate thereof. On February 27, 1890, appellees filed the original bill in this suit, praying for a dissolution of the partnership and an accounting of the partnership funds. April 24, 1890, the appellant filed his demurrer to the bill. The case was by consent of parties continued from time to time, pending the determination of the suit of appellant to set aside the deed and the codicil to the will of Thompson Wilcoxon, which cause reached its final determination in this court adversely to the appellant November 9, 1896. (See *Wilcoxon* v. *Wilcoxon,* 165 Ill. 454.) Appellant filed

his answer in this cause August 17, 1897, denying that complainants were entitled to the relief sought. To this answer the appellees filed replication on September 27, 1897. The matter was referred to the master to take and report proofs, with his findings, and to state an account, but before the master filed his report thereon appellees dismissed their bill March 6, 1899. On March 8, 1899, appellant filed his motion to set aside said order of dismissal, which motion was on March 29, 1899, denied by the court. January 29, 1900, the appellant filed his bill in the circuit court setting up the lease and partnership agreement and alleging various grounds of complaint, and praying for relief in the alternative. The prayer of this bill was as follows:

"That an account may be taken of all and every of said co-partnership dealings and transactions, and also an account of all of the moneys received from and paid out on account of said property, said indebtedness and the matters and things mentioned and enumerated in said co-partnership agreement and said lease, under and by virtue of said agreement and said lease, by the several parties thereto; that said co-partnership may be dissolved; that said defendants may, as to the court shall seem most equitable and appropriate, *either* be decreed to pay complainant all moneys expended or appropriated by him or on his account for the benefit and improvement of said property and estate and in the erection and completion of said building therein mentioned together with reasonable and adequate compensation for his services and labors rendered and performed under said agreement and said lease, and all damages by him sustained by reason of said fraud and said violation of said agreement and said lease, together with legal interest on said moneys, *or* that they, said defendants, may be decreed and be declared to hold said property purchased and acquired by virtue of said deed as trustees, for the mutual and equal benefit of all the parties to said co-partnership agreement, and that they pay to complainant a one-fourth part

230—7

of the net proceeds of the rents, issues and profits of said property after the payment of all the expenses of managing and caring for said property, and that the complainant be declared to be entitled to a one-fourth interest in said property, and all the benefits, advantages and emoluments arising or growing out of said property, upon his contributing his *pro rata* share of the purchase money paid for said property and bearing his *pro rata* share of the expenses arising or growing out of the ownership, management and care of said property, which complainant is ready, willing, able and offers to do; that said defendants may be decreed to pay the complainant whatever may, upon the taking of said account, appear to be due him, complainant being ready and willing and able and offering to pay to the said defendants whatever shall, upon the taking of said account, appear to be due them; complainant. offers to do any and all things that may to the court seem meet and just, and prays that pending the disposition and termination of the cause said defendants, and each of them, may be enjoined from selling, transferring, mortgaging or otherwise disposing of or encumbering said property described in said deed or any part thereof, and that the complainant may have such other and further or different relief in the premises as equity may require and to the court shall seem meet."

The relief prayed for in said cause was denied and the bill dismissed by the court on the ground of *laches.* The ruling of the circuit court in this regard was affirmed in this court on October 25, 1902. (See *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244.) On December 26, 1902, at the instance of the appellant a writ of error issued from the Appellate Court for the Second District to review the order of the court dismissing the original bill herein on March 6, 1899, on motion of appellees and without the consent of the appellant. On October 23, 1903, the Appellate Court reversed the decree and remanded the cause for further proceedings, and on December 7, 1903, the cause was re-

docketed in the circuit court. (See *Wilcoxon* v. *Wilcoxon,* 111 Ill. App. 90.) Thereupon appellant filed an amended answer and a cross-bill, to which a demurrer was afterwards sustained. On April 30, 1904, he filed an amended cross-bill, in which the relief prayed for is identical with that prayed for in his bill of January 29, 1900, except that instead of praying for an injunction, as in that bill, he prays for the appointment of a receiver. A comparison of the allegations of the bill of January 29, 1900, with those in appellant's amended cross-bill herein, shows that in all essential particulars they are identical in substance, in meaning and in language, except wherein the amended cross-bill recites legal proceedings which had not occurred at the time the bill was filed, January 29, 1900. On June 6, 1904, appellees filed a general and special demurrer to the amended cross-bill, which demurrer was sustained on June 29, 1904, and the amended cross-bill was dismissed for the want of equity. On December 7, 1904, appellees, by leave of the court, filed a supplemental bill, in which they show the filing by appellant of his bill of January 29, 1900, and the proceedings thereon, resulting in its dismissal and the affirmance by this court of the said decree of dismissal. They show the writ of error proceedings in the Appellate Court to review the order of the circuit court in dismissing the original bill herein, and the re-docketing of this cause in the circuit court in pursuance of the remanding order of the Appellate Court. In fact, this supplemental bill shows substantially all the litigation between the parties hereto, up to the time of the filing of the amended cross-bill and its dismissal upon demurrer. Appellees allege in their said supplemental bill that the proceedings had on appellant's bill of January 29, 1900, in *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244, amounted to an adjudication of the matter herein, and that the dismissal of the appellant's amended cross-bill was, in effect, an adjudication also. Appellees prayed that appellant be denied the relief or either alternative asked for in his

amended answer, and prayed for a dismissal of their original bill herein. Appellant answered said supplemental bill, denying that either of said proceedings amounted to an adjudication, and also questioned appellees' right to maintain the supplemental bill. A replication was filed to the answer and the issues as made up were referred to the master, who found the facts substantially as above stated, and who recommended, as conclusions of law, that the supplemental bill should be sustained. Appellees and appellant both objected to the master's report, and the objections were overruled and the court dismissed the original bill for want of equity, at appellant's costs.

The principal error insisted on by appellant in this court is, that the court erred in sustaining the supplemental bill and in dismissing the original bill and the amended cross-bill of appellant.

H. T. WILCOXON, for appellant.

J. A. CRAIN, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court :

This case is between the same parties and involves substantially the same matters that were litigated and determined in the case of *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244. In that case Thomas Wilcoxon, appellant herein, filed an original bill against appellees herein, seeking to have himself adjudged the owner of a one-fourth interest in the Opera House block and the Post-office block, on the ground that appellees and appellant were partners at the time the title was conveyed to appellees by their father, and that the title so taken by appellees should be held to inure to the benefit of the four partners, or, in the alternative, appellant prayed that the court should decree that the taking of the deed in appellees' names, and their failure to record the same or otherwise give notice to appellant of such convey-

ance, was such a fraud upon appellant as in equity should
release him from his contract to look after and manage the
property for $200 per year, and that he should, upon an
accounting, be allowed what his services were reasonably
worth. The nature of the so-called partnership agreement
and the prayer of appellant's original bill, filed in 1900, are
set out fully and accurately in the statement that precedes
this opinion. It is admitted here, as it was in appellant's
original bill, that he was informed that his father had con-
veyed the Opera House block and the Post-office block in
December, 1887. It will be borne in mind that the case at
bar was commenced by appellees for a dissolution of the
partnership and for a general accounting against appellant
February 27, 1890, and remained on the docket of the cir-
cuit court until March 6, 1899, when it was dismissed. It
remained off the docket and out of court until December 7,
1903, when it was re-instated on a mandate from the Ap-
pellate Court for the Second District, and on that day, by
an amended answer and cross-bill, appellant for the first
time in this suit brought to the attention of the court the
same grounds for equitable relief which formed the basis of
his original suit commenced January 29, 1900.

As throwing some light upon the history of the con-
troversy between these parties, it may be mentioned that on
January 24, 1889, appellant filed a bill in the circuit court
of Stephenson county to set aside the deed made by his
father to appellees, and also to annul the codicil to the will
of Thompson Wilcoxon and to set aside the probate there-
of. This case was finally determined in this court, result-
ing in a judgment sustaining both the deed and the codicil
to the will, November 9, 1896. (See *Wilcoxon* v. *Wilcoxon,*
165 Ill. 454.) While the parties were engaged in litigating
the question of the validity of the deed and codicil the pres-
ent suit was not brought to a hearing, but was continued
from time to time by the circuit court. After the final dis-
position of the bill to set aside the deed and codicil, appel-

lant, on August 17, 1897, filed his first answer in the case at bar. No cross-bill was filed by appellant at that time, nor did he by his answer claim any interest in the freehold nor allege any fraud against appellees, although he had, by his own admission, full knowledge of all the facts upon which he now relies, since December, 1887. After some other unimportant steps were taken in this case, appellees, on March 6, 1899, voluntarily dismissed their bill, over the objections of the appellant. This case was then apparently abandoned by all of the parties and appellant turned his attention to his original bill, filed January 29, 1900. It was in this original bill of 1900 that the appellant first sought equitable relief on the theory that the conveyance to his partners by his father was in fraud of his rights as a partner, and that the title should be held to inure to him to the extent of his interest in the partnership. After a rehearing was denied in this court in appellant's suit of 1900 and he had been defeated on the ground of *laches*, this cause being re-instated under a mandate from the Appellate Court in December, 1903, appellant filed his answer and cross-bill in the case at bar, setting out the same grounds of equitable relief relied on in his original suit of 1900.

Much of appellant's brief is devoted to a discussion of the question whether the suit of 1900 is a bar to the relief appellant seeks in this case. We do not deem it necessary to examine into and determine whether all of the elements of an estoppel by judgment are present here. It seems clear that there is an identity of the subject matter of the suit and of the parties thereto, and that the thing decided is the same matter which the appellant is insisting on against the same parties in the present action. It is true that in the case at bar appellees, by their original bill, prayed for an accounting and a dissolution of the partnership, but appellees had long since voluntarily abandoned their original bill and dismissed the same out of court, and only came back when compelled to do so by the judgment of the Appellate

Court.   Appellees are not insisting on any accounting or other relief against appellant, and they are only in court for the purpose of resisting appellant's alleged cause of action against them.   There is therefore no substantial difference, so far as the live questions between the parties are concerned, in this case and the suit of 1900.   Independently of the question as to whether the judgment in the suit of 1900 can be set up as a bar or estoppel against the same claim or cause of action in this suit, there is no question that the former judgment is an estoppel as to those matters in issue or points controverted upon the determination of which the decree was rendered.   *Cromwell* v. *County of Sac,* 94 U. S. 351; *Equitable Trust Co.* v. *Fisher,* 106 Ill. 189; *Riverside Co.* v. *Townsend,* 120 id. 9; *Stone* v. *Salisbury,* 209 id. 56.

In the suit of 1900 between these parties the appellant's right to equitable relief on the ground relied on in his bill then and in his answer and cross-bill now was held barred by his *laches.*   It was also determined in that case that the pendency of this suit did not excuse his delay, for the reason that up to the time of the rendition of the decision in that case appellant had not interposed any pleading under which the relief sought by his bill of 1900 could have been obtained.   This appears fully from the opinion of this court in *Wilcoxon* v. *Wilcoxon,* 199 Ill. 244, and the whole matter is fully brought before the court by the supplemental bill filed by appellees in this case.

If argument were required to show that appellant had not raised the issue as to the inuring of the title under his father's deed to appellees to him, we would call attention to the fact that appellant sued out a writ of error from the Appellate Court and took this case there to have the order of dismissal reviewed.   If the issue now involved as to appellant's interest in the freehold had been in the case then, the Appellate Court would have had no jurisdiction.   After the reversal by the Appellate Court appellant then presented

issues by his pleadings involving a freehold, and hence the present appeal is properly brought to this court. There was no such question in this case until December, 1903.

We therefore find that appellant took no steps, by way of cross-bill or otherwise, to obtain relief on the theory that he was, in equity, one-fourth owner in these premises, or that appellees had been guilty of a fraud in concealing from him the existence of the deed, notwithstanding full information of these facts came to him on the 27th day of December, 1887. Leaving out of view for the time being the litigation under the bill of 1900, we thus see that we have a period of about fifteen years after appellant discovered his rights before he took any action for equitable relief. There is no difference in the application of the equitable doctrine of *laches* whether it is interposed against relief sought by an original bill or by cross-bill. The equitable doctrine against the enforcement of stale claims is not a rule of pleading. It is one of the fixed doctrines of courts of equity that nothing can call forth this court into activity but conscience, good faith and reasonable diligence, and the absence of any of these elements is equally fatal to a recovery whether they appear in a cross-bill or in an original bill. A cross-bill, when filed to obtain affirmative relief, like an original bill, should set forth equitable grounds of relief and show a state of facts upon which a court of equity could be called upon to act if the same grounds were presented in an original bill. (*Gage* v. *Mayer,* 117 Ill. 632; Story's Eq. Pl.—10th ed.—sec. 628.) There is no excuse offered by appellant which in equity can relieve him from the imputation of *laches* in this case that has not already been adjudged insufficient by this court in the former case. We regard his situation even worse now than it was when this matter was before us on the former occasion.

Without deciding whether appellant is barred under the doctrine of *res judicata* by virtue of the former decree, we hold that appellant's delay in bringing to the attention of

the court the grounds relied on for equitable relief in his answer and cross-bill in this case is a bar to his right of recovery.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

HAND, C.J., CARTWRIGHT and SCOTT, JJ., dissenting.