(No. 51652.—

CLINTON THURSTON, Adm'r, Appellee, v. THE STATE
BOARD OF ELECTIONS *et al.,* Appellants.

*Opinion filed August 1, 1979.—Rehearing
denied September 28, 1979.*

GOLDENHERSH, C.J., took no part.

William J. Scott, Attorney General, of Springfield (Kenneth G. Anspach, Assistant Attorney General, and Samuel W. Witwer, Special Assistant Attorney General, of Chicago, of counsel), for appellant State Board of Elections.

Saul J. Morse, of Springfield, for appellant Stephen L. Spomer.

Brown, Hay & Stephens, of Springfield (Edward J. Cunningham and Mark H. Ferguson, of counsel), for appellants Max G. Bevill *et al.*

Londrigan & Potter, P.C., of Springfield, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The circuit court of Sangamon County enjoined the State Board of Elections from certifying Stephen Spomer as the winner in an election for resident circuit judge of Alexander County. Spomer was nominated by the Alexander County Republican Central Committee after the Republican Party failed to nominate a candidate at the primary election. After the general election, at which Spomer was the winner, Oris Vick, an Alexander County voter and Democratic precinct committeeman (now deceased), and Robert Lansden, the Democratic candidate who opposed Spomer at the general election, brought the action to enjoin the certification of Spomer.[1] The Sanga-

---

[1]Prior to oral argument of this cause in this court, but after the issuance of the permanent injunction by the circuit court of Sangamon County, plaintiff Oris P. Vick died. A motion suggesting his death was filed on March 19, 1979, by the remaining plaintiff-appellee, Robert Lansden, and Oris Vick was removed as a party from the suit, and no substitution was made. Prior to the adoption of this opinion, Lansden died. A motion by the attorney for Lansden suggesting his death was filed. An order was entered substituting Clinton Thurston as the plaintiff-appellee, prior to the filing of this opinion.

mon County circuit court issued a permanent injunction against the State Board of Elections, holding that the statutory procedure for filling a vacancy in the nomination, which was followed by the Alexander County Republican Central Committee, and the Board of Elections Regulation 7—1, which approved that procedure, are contrary to the provisions of section 12(a) of article VI of the Constitution of 1970. The defendants, Stephen Spomer and the State Board of Elections, were allowed a direct appeal to this court pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)).

On March 21, 1978, Robert Lansden was nominated at the primary election to be the Democratic candidate for resident circuit judge of Alexander County. The Republican Party listed no candidates on the primary ballot, and no Republican write-in candidate filed the necessary nomination papers after the primary. Shortly after the primary, Lansden wrote to the State Board of Elections to inquire about opposing candidates. The Board responded that no person had qualified but noted that a candidate could be nominated by the Republican Central Committee. The letter advised Lansden that he would be told if anyone did qualify as a candidate.

On July 26 the Alexander County Republican Central Committee, pursuant to the provisions of section 7—61 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 7—61), nominated Stephen Spomer as the Republican candidate for circuit judge, and on July 27 appropriate nominating documents were filed for Spomer. Because of our decision based on the issues discussed below, we make no determination as to whether plaintiffs' complaint for declaratory judgment and injunction was a proper method of seeking relief after the general election.

On July 27 the Cairo Evening Citizen published a front-page story on the nomination, and Lansden personally acknowledged the upcoming political contest when he met Spomer at a local club. It was stipulated that Oris Vick also knew of Spomer's candidacy on July 27. In addition, Lansden and Spomer saw each other on several

occasions during the political campaign.

Neither Vick nor Lansden objected to Spomer's candidacy prior to the November 7, 1978, general election. On November 10, Lansden congratulated Spomer on his victory through an advertisement in the Cairo Evening Citizen. On November 20, 1978, Spomer resigned his position as Massac County State's Attorney, and on November 21, 1978, this action was commenced in Sangamon County by plaintiffs, Vick and Lansden. The Sangamon County circuit court issued a permanent injunction against the State Board of Elections on January 3, 1979, enjoining it from certifying Spomer as the winner of the November 7 election.

The parties have raised numerous issues concerning the validity of Spomer's nomination, but for reasons stated below it is unnecessary to discuss them. By failing to object to Spomer's nomination prior to the general election, the plaintiffs are prevented from now raising the validity of Spomer's nomination under the doctrine of *laches*.

*Laches* is applied where there is "such neglect or omission to assert a right, taken in conjunction with a lapse of time of more or less duration and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity." (*Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 552.) (See *Freymark v. Handke* (1953), 415 Ill. 360, 366; *Carlson v. Carlson* (1951), 409 Ill. 167, 173.) Where a party is not "vigilant" or "slumber[s] on [his] rights" a court should not, in equity, allow favorable action. (*Carlson v. Carlson* (1951), 409 Ill. 167, 173; *People ex rel. McIntyre v. Keene* (1926), 322 Ill. 255, 258.) It is necessary to examine the facts of each case to determine the applicability of *laches* (*McCartney v. Mc-Cartney* (1956), 8 Ill. 2d 494, 500), and under the circumstances of this case it is clear that Vick and Lansden failed to diligently assert their rights to the defendants'

detriment.

Lansden and Vick knew of Spomer's nomination in July; yet, neither of the plaintiffs challenged Spomer's nomination until nearly four months had passed. It is vitally important that nomination objections be resolved at the earliest possible time. The procedure followed by the plaintiffs in objecting to Spomer's candidacy after the election could have been pursued prior to the November election. Had this challenge been successful prior to the general election, Spomer could have avoided the campaign expenses and retained his Massac County position as State's Attorney. Their failure to object worked a severe hardship on Spomer and misled the voting public. Lansden and Vick are guilty of *laches* in that they failed to assert their objections to the detriment of Spomer and to those who had promoted his candidacy and cast their votes for him.

If there were objections to the nomination, those objections should have been raised before the general election. As noted in *People ex rel. Lewis v. Waite* (1873), 70 Ill. 25, 27:

> "[R]elator participated in the election he now seeks to have declared void, by voting thereat, and was himself an opposition candidate to respondent. Relator knew then, as well as now, that irregularities had intervened in the conduct of the election, and he ought not to be permitted to disturb the public welfare by having an election declared void, in which he participated with a full knowledge of all irregularities that existed. A sound public policy forbids it."

The nomination objections were, in effect, dissolved by the general election. *Cf. Welsh v. Shumway* (1908), 232 Ill. 54; *Schuler v. Hogan* (1897), 168 Ill. 369; *People ex rel. Elder v. Quilici* (1941), 309 Ill. App. 466, 474.

In a challenge of recall petitions begun after the recall

election, one judge observed:

> "The petitioners had all of forty-five days which elapsed, between the filing of the petition and the day of election, to have brought a proceeding similar to the one they now bring. They did not do so. They slept upon their rights during all of that time, and now since the election, conducted at large expense, and since every elector has had an opportunity to vote upon the issues of the election, we think the plaintiffs are estopped at this late time to maintain the proceedings which should have been maintained if at all during the period of time between the filing of the petitions and the date of the election. (*State ex rel. Laird v. Hall* (1921), 48 N.D. 11, 26, 186 N.W. 284, 290 (Grace, C.J., specially concurring).)

Similarly, a challenge to the nomination of an Idaho candidate was dismissed when it was filed after the general election. As one judge succinctly noted: "[I] f the nomination of Scott by the committee, and placing his name on the Populist ticket, was contrary to law, the appellant should have made application to have the same corrected before the election." *Baker v. Scott* (1895), 4 Idaho 596, 604, 43 P. 76, 78 (Sullivan, J., concurring).

In *Schuler v. Hogan* (1897), 168 Ill. 369, a Republican nomination was challenged after the general election. The court noted:

> "A candidate should not be permitted to lie by, and point out such objections as the [objections] present after the election has been held. To permit such a course would be to defeat a fair expression of the will of the people. Where a candidate for public office makes no objection to the certificate of nomination of his opponent before the election, when the statute provides for the time and mode of presenting such objections,

he should be regarded as having waived all objections, that may exist to the presence on the official ballot of any names of nominees not properly entitled to be there." (*Schuler v. Hogan* (1897), 168 Ill. 369, 377.)

This court concluded in *Welsh v. Shumway* (1908), 232 Ill. 54, 59, "that the failure of a candidate to object to his opponent's certificate of nomination in the manner provided by statute waives the objection ***."

Both Vick and Lansden had actual and constructive notice of Spomer's nomination before the general election; yet, neither of them objected to his candidacy. To now allow their objections would work to the detriment of Spomer and the public. Spomer would be severely prejudiced financially and otherwise. The will of the general public, as expressed fairly at the polls, would be nullified. The issue in this case involves only the validity of the nominating process by which Spomer became a candidate for the office. His qualification to hold that office is not involved. Under the circumstances of this case, we hold that having failed to object to the nomination procedure prior to the election, Vick and Lansden are guilty of *laches* and cannot be allowed at this late time to challenge Spomer's candidacy.

Accordingly, the judgment of the Sangamon County circuit court is reversed and the injunction is dissolved.

*Judgment reversed;*
*injunction dissolved.*

MR. CHIEF JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.