(No. 71152.—

JOHN P. TULLY, Appellant, v. THE STATE OF ILLI-
NOIS *et al.*, Appellees.

*Opinion filed June 4, 1991.—Rehearing denied June 27, 1991.*

426

MORAN, J., took no part.

Rieck & Crotty, of Chicago (Richard J. Sorman, Jerome F. Crotty, Thomas M. Cannon and Kevin P. Brown, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (James P. Nally, Special Assistant Attorney General, of Chicago, of counsel), for appellees State of Illinois et al.

Jones, Ware & Grenard, of Chicago (Mark E. Jones, and Anthony C. Swanagan, of counsel), for appellee William S. White.

J. Timothy Eaton and Shelley Rice Weinberg, of Chicago, for amicus curiae Appellate Lawyers Association.

JUSTICE BILANDIC delivered the opinion of the court:

John P. Tully, plaintiff, and William Sylvester White,

defendant, claim the same seat on the First District of the Illinois Appellate Court. Each claim is based on the results of the general election held on November 6, 1990. Tully asserts that he was duly *elected* to occupy that seat. White contends that he was duly *retained* to occupy the same seat. The trial court held that the automatic retirement provision of the Compulsory Retirement of Judges Act (Act) (Ill. Rev. Stat. 1989, ch. 37, par. 23.71) is unconstitutional. Therefore, White was declared the lawful occupant of the appellate court seat for an additional term of 10 years, commencing on December 3, 1990. This court allowed Tully's direct appeal from the judgment of the circuit court of Cook County (134 Ill. 2d R. 302(a)).

The Illinois Constitution of 1970 provides that appellate court judges shall be elected at general or judicial elections as the General Assembly shall provide. (Ill. Const. 1970, art. VI, §12(a).) Duly elected appellate court judges seeking another term of office do not again run for election, but instead run for retention during the general election. (Ill. Const. 1970, art. VI, §12(d).) Pursuant to its constitutional authority (Ill. Const. 1970, art. VI, §12), the General Assembly has enacted the Election Code (Ill. Rev. Stat. 1989, ch. 46, par. 1—1 *et seq.*), which designates the procedure for candidates seeking election to judicial office. It also designates the procedure for elected judges whose terms are about to expire and who desire to seek retention for another term.

A judge must first be *elected* to the appellate court. However, before one can be *elected* to that office, there must be a vacancy in that office. Such a vacancy occurred in 1980. White was duly nominated as the Democratic candidate for the vacant appellate court seat at the primary election in the spring of 1980. At the November 1980 general election, he defeated a Republican opponent and took office on the first Monday of Decem-

ber of 1980 to serve for a term of 10 years. The term would end on December 3, 1990.

The Illinois Constitution of 1970 provides that an appellate court seat becomes vacant by, *inter alia*, the retirement of the justice holding that office. (Ill. Const. 1970, art. VI, §12(b).) The General Assembly has enacted the Compulsory Retirement of Judges Act, which provides, in pertinent part, that "[a] judge is automatically retired at the expiration of the term in which the judge attains the age of 75." Ill. Rev. Stat. 1989, ch. 37, par. 23.71.

White's 10-year term, to which he was *elected* in 1980, was scheduled to expire on December 3, 1990. During his term, on July 27, 1989, White attained the age of 75. By operation of the Act, he was "automatically retired" on December 3, 1990. Nonetheless, White sought to be retained in office for another term and timely submitted his declaration of candidacy to the Secretary of State on October 4, 1989. Because White was aware that the automatic retirement provision would apply to bar his retention bid, White also sent a letter to the Secretary of State, which provided, in pertinent part:

> "I decline to be retired pursuant to the automatic retirement provisions of the Act relating to the compulsory retirement of judges (Ill. Rev. Stat. 1987, ch. 37, par. 23.71) because mandatory retirement of state court judges at age 75 is equivalent to discharge solely on the basis of age, and is forbidden by the Federal Age Discrimination in Employment Act (29 U.S.C. sec. 621, *et seq.*). I am submitting herewith my Judicial Declaration of Candidacy, and request that you certify my candidacy to the proper election official as required by article VI, subsection.12(d) of the Illinois Constitution."

The Secretary of State duly transmitted White's judicial declaration of candidacy with accompanying correspondence to the State Board of Elections (Board).

Between December 12 and December 19, 1989, the Board accepted nominating petitions from five candidates who sought to run in the primary election for White's vacant seat. The Board thereafter certified the names of the candidates, including Tully's, and directed the county clerk of Cook County to place their names on the primary election ballot of their respective parties as candidates for the vacancy on the appellate court created by White's retirement. The primary election was held on March 20, 1990. Tully and Lester Bonaguro were the successful Democratic and Republican candidates, respectively.

Approximately five months after the March primary, on August 31, 1990, the Board directed the county clerk to place White's name on the judicial *retention* ballot at the November 6, 1990, general election. The Board also certified the names of Tully and Bonaguro and directed the county clerk to place their names on the judicial *election* ballot at the November 6, 1990, general election to fill the vacancy on the appellate court created by White's retirement.

The record indicates that Tully first learned of White's candidacy for retention from certain newspaper articles appearing in late September 1990. On October 1 and 2, Tully contacted the Board and White to attempt to resolve the confusion created by the fact that the general election voters would be electing a candidate to fill the White vacancy and, at the same time, deciding whether White should be retained in office for another term. Tully was not able to obtain relief from the Board or White.

On October 4, 1990, Tully promptly filed an action for *mandamus* and injunctive relief in the circuit court of Cook County, seeking to have Justice White declared ineligible to be retained for another term as justice of the Illinois Appellate Court due to the automatic retirement provision of the Act. Lester Bonaguro, the successful Republican primary candidate, the Secretary of State, the State Board of Elections, the Cook County clerk, the Chicago board of election commissioners, and Justice White were named as defendants. The official ballots for the November 6, 1990, general election had already been printed to include both the candidates seeking to be elected to Justice White's vacancy and Justice White's bid to be retained for another term, and absentee ballots had already been sent and received by this time. Determining that nothing further could be done to resolve the confusion, the circuit court entered an order to maintain the status quo and the general election went forward. On November 6, 1990, White was retained in office and Tully was elected to the vacancy created by White's retirement.

Thereafter, White answered Tully's complaint and filed an affirmative defense. On November 9, 1990, White asserted, *inter alia*, that the automatic retirement provision of the Act was unconstitutional. The Secretary of State, the Board and the Cook County clerk all filed answers essentially alleging that they would abide by the decision of the court.

The circuit court declared that the automatic retirement provision was unconstitutional and, therefore, did not operate to preclude White from seeking another term of office. The court ordered the Board to proclaim that White had been retained in office and ordered that Tully's election to White's appellate court seat was null and void. The Secretary of State filed a brief with this court in which he stated he would abide by this court's

decision. An *amicus curiae* brief was accepted from the Appellate Lawyers Association.

For reasons stated below, it is not necessary for this court to decide the constitutionality of the automatic retirement provision of the Act.

*Thurston v. State Board of Elections* (1979), 76 Ill. 2d 385, is a strikingly similar case which considered conflicting claims to a circuit court seat:

> "After the general election, at which Spomer was the winner, Oris Vick, an Alexander County voter and Democratic precinct committeeman (now deceased), and Robert Lansden, the Democratic candidate who opposed Spomer at the general election, brought the action to enjoin the certification of Spomer. The Sangamon County circuit court issued a permanent injunction against the State Board of Elections, holding that the statutory procedure for filing a vacancy in the nomination, which was followed by the Alexander County Republican Central Committee, and the Board of Elections Regulation 7—1, which approved that procedure, are contrary to the provisions of section 12(a) of article VI of the Constitution of 1970. The defendants, Stephen Spomer and the State Board of Elections, were allowed a direct appeal to this court pursuant to Rule 302(b) (58 Ill. 2d R. 302(b)).
>
> On March 21, 1978, Robert Lansden was nominated at the primary election to be the Democratic candidate for resident circuit judge of Alexander County. The Republican Party listed no candidates on the primary ballot, and no Republican write-in candidate filed the necessary nomination papers after the primary. Shortly after the primary, Lansden wrote to the State Board of Elections to inquire about opposing candidates. The Board responded that no person had qualified but noted that a candidate could be nominated by the Republican Central Committee. The letter advised Lansden that he would be told if anyone did qualify as a candidate.
>
> On July 26 the Alexander County Republican Central Committee, pursuant to the provisions of section 7—61 of the Election Code (Ill. Rev. Stat. 1977, ch. 46, par. 7—

61), nominated Stephen Spomer as the Republican candidate for circuit judge, and on July 27 appropriate nominating documents were filed for Spomer." (*Thurston*, 76 Ill. 2d at 386-87.)

This court concluded that it was not necessary to consider Vick and Lansden's constitutional challenge to Spomer's nomination because:

"By failing to object to Spomer's nomination prior to the general election, the plaintiffs are prevented from now raising the validity of Spomer's nomination under the doctrine of *laches.*" *Thurston*, 76 Ill. 2d at 388.

*Laches* is an equitable doctrine which precludes the assertion of a claim by a litigant whose unreasonable delay in raising that claim has prejudiced the opposing party. (*People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 482.) The doctrine is grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party. (*Rexroat v. Abatte* (1987), 163 Ill. App. 3d 796, 799.) Two elements are necessary to a finding of *laches*: (1) lack of diligence by the party asserting the claim and (2) prejudice to the opposing party resulting from the delay. (*Zelazny v. Lyng* (7th Cir. 1988), 853 F.2d 540, 541.) "There is no difference in the application of the equitable doctrine of *laches* whether it is interposed against relief sought by an original bill or by cross-bill." *Wilcoxon v. Wilcoxon* (1907), 230 Ill. 93, 104.

Writing for this court in *Thurston*, Justice Ryan concluded:

"It is necessary to examine the facts of each case to determine the applicability of *laches* (*McCartney v. McCartney* (1956), 8 Ill. 2d 494, 500), and under the circumstances of this case it is clear that Vick and Lansden failed to diligently assert their rights to the defendants' detriment.

Lansden and Vick knew of Spomer's nomination in July; yet, neither of the plaintiffs challenged Spomer's nomination until nearly four months had passed. It is vitally important that nomination objections be resolved at the earliest possible time. The procedure followed by the plaintiffs in objecting to Spomer's candidacy after the election could have been pursued prior to the November election. Had this challenge been successful prior to the general election, Spomer could have avoided the campaign expenses and retained his Massac County position as State's Attorney. Their failure to object worked a severe hardship on Spomer and misled the voting public. Lansden and Vick are guilty of *laches* in that they failed to assert their objections to the detriment of Spomer and to those who had promoted his candidacy and cast their votes for him." *Thurston*, 76 Ill. 2d at 388-89.

Applying the principles of *Thurston* to the case at bar, we conclude that, under the doctrine of *laches* and the facts of this case, White cannot be allowed to challenge Tully's election to the appellate court.

In October of 1989, White communicated his intent to challenge his impending automatic retirement (on December 3, 1990) to the Secretary of State and the Board. He did not commence any legal action until a year later when he filed an affirmative defense to Tully's suit.

Between December 12 and December 19, 1989, five candidates, Democrats and Republicans, filed nominating petitions to become the candidate of his or her party by winning the March 1990 primary. The contest for the White vacancy on the appellate court was one of the most publicized campaigns in the primary and the general election. The qualifications of the candidates were scrutinized and evaluated by the media, bar associations, political organizations and the usual array of citizen and special interest groups.

Between December of 1989 and March 20, 1990, White was at least constructively aware of the fact that

his seat on the court was declared vacant as of December 3, 1990, and that a spirited contest was underway to fill his seat. If White voted in the March 1990 primary, which would be reasonable to assume, he would have noticed that candidates were running to fill a vacancy caused by his automatic retirement. Yet, while candidates expended considerable time, energy and money on their campaigns, he sat by and did not raise any objection to their candidacy. He did not assert that his seat was illegally declared vacant before any court of competent jurisdiction.

The facts and circumstances of this case lead us to the conclusion that White was aware that his seat was considered vacant as early as December 1989 or, at the latest, January 1990 and that, thereafter, the Board received nominating petitions for the office. The facts and circumstances also lead us to the conclusion that White was aware of the fact that the candidates who aspired to his seat incurred substantial expenses. We can therefore conclude that White did not diligently assert a challenge to the Act and that his delay was prejudicial to Tully and the other candidates. *Laches* applies.

In *Thurston*, Lansden and Vick were guilty of *laches* and therefore barred from asserting a constitutional challenge to the manner in which Spomer was nominated.

In the case *sub judice*, White did not assert his constitutional challenge to the automatic retirement provision of the Act for almost a year. During that period, Tully and others were prejudiced by White's delay. Under the facts of this case, White is guilty of *laches* and barred from asserting any objections, constitutional or otherwise, to the election of Tully. It would be inequitable to enforce White's *retention* rather than Tully's *election*.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and this cause is remanded with directions that the circuit court order the Board to proclaim that John P. Tully has been elected to the First District of the Illinois Appellate Court. The retention of William Sylvester White is vacated.

*Judgment reversed;*
*cause remanded with directions.*

JUSTICE MORAN took no part in the consideration or decision of this case.