2021 IL App (2d) 190852-U
No. 2-19-0852
Order filed March 2, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff, | ) ) | |
| v. | ) ) | No.   10-CH-3153 |
| SAYEDA VASEEM KHAN; MOHAMMAD I. KHAN; STONEGATE CONDOMINIUM ASSOCIATION; UNKNOWN HEIRS AND LEGATEES OF MOHAMMAD I. KHAN, IF ANY; UNKNOWN HEIRS OF SAYEDA VASEEM KHAN, IF ANY; UNKNOWN OWNERS; and NON- RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| (Sayeda Vaseem Khan and Mohammad I. Khan, Petitioners-Appellants, v. Federal National Mortgage Association; Stonegate II, LLC; and NFAR Enterprises, Inc., Respondents-Appellees). | ) ) ) ) ) ) | Honorable James D. Orel, Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Based on the application of the doctrine of laches, the trial court properly granted respondents' motions to dismiss petitioners' section 2-1401 petition. Therefore, we affirm.

¶ 2    This appeal arises from a residential mortgage foreclosure action from which petitioners, Sayeda Vaseem Khan and Mohammad I. Khan, sought relief under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)), over five years after the trial court approved the judicial sale of the property. Petitioners argued that the orders entered against them were void for lack of personal jurisdiction. The trial court granted the motions to dismiss filed by respondents, Federal National Mortgage Association (Fannie Mae), Stonegate II, LLC (Stonegate), and NFAR Enterprises, Inc. (NFAR). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On June 1, 2010, BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP (BAC), filed a complaint against petitioners to foreclose a mortgage dated July 31, 2007, for the property commonly known as 421 Gregory Avenue, Unit 1B, Glendale Heights, Illinois (the property). On June 1, 2010, the clerk of the circuit court of Du Page County issued a summons that listed the defendants as "Sayeda Vaseem Kahn et al." in the caption. The third page of the summons listed all individual defendants and their addresses, including both petitioners, under the heading "PLEASE SERVE THE FOLLOWING DEFENDANTS AT THE FOLLOWING ADDRESSES."

¶ 5    On July 8, 2010, BAC filed an affidavit of service stating that Sayeda had been served at 32 West Hartford Drive in Schaumburg on June 16, 2010, by substitute service. Mohammed was served by publication on August 27, 2010. Petitioners did not file an appearance or otherwise respond to the foreclosure complaint.

¶ 6    On September 26, 2011, BAC moved to substitute Fannie Mae as the plaintiff based on a

sale and assignment of the mortgage. The trial court granted the motion on October 30, 2012.

¶ 7    In the meantime, on March 5, 2012, petitioners filed a chapter 7 bankruptcy petition. They averred that the property was encumbered by a mortgage and that they had no equity in the property. They submitted a sworn statement advising of their intent to surrender the property in satisfaction of the debt secured by the mortgage. The bankruptcy case was closed on June 29, 2012, with petitioners receiving a discharge of their debts.

¶ 8    On October 30, 2012, the trial court entered an order of default against petitioners and a judgment of foreclosure and sale. A judicial sale took place on February 5, 2013. On March 15, 2013, the trial court entered an order approving the foreclosure report of sale and distribution, and approving the order for possession and deed.

¶ 9    The property was conveyed to Fannie Mae through a sheriff's deed dated March 15, 2013,and recorded on August 9, 2013. Fannie Mae conveyed it to Bushra Ghaniwala and Mohammed H. Ghaniwala by a special warranty deed also recorded on August 9, 2013. The Ghaniwalas later conveyed the property to NFAR by warranty deed dated August 18, 2015, and recorded August 25, 2015. On June 21, 2018, Stonegate purchased the property from NFAR, with title conveyed by special warranty deed recorded on September 19, 2018.

¶ 10    On August 13, 2018, over five years after the trial court approved the judicial sale of the property, petitioners filed their section 2-1401 petition. They sought to vacate the foreclosure judgment as void for lack of personal jurisdiction on the basis that the summons failed to comply with statutory requirements as to Mohammad because it did not name him on its face, and because Sayeda was served in Cook County by an unauthorized special process server. They sought to regain possession of the property and/or obtain damages from respondents as restitution.

¶ 11    On March 1, 2019, Fannie Mae filed an amended motion to dismiss the section 2-1401

petition, pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2018)). It argued that: (1) the protections of section 2-1401(e) of the Code of Civil Procedure (735 ILCS 5/2-1401(e) (West 2018)) applied because lack of service did not affirmatively appear in the record; (2) the petition was barred by the doctrine of laches because petitioners waited over five years to assert their claim; (3) the petition was barred under the doctrine of judicial estoppel based on the petitioners' sworn bankruptcy pleadings; and (4) the requested relief of possession of the property was improper because if the judgements against petitioners were vacated, the foreclosure action against them would be reopened, and the current property owner would remain in possession of the property until the action was resolved.

¶ 12    On July 9, 2019, NFAR and Stonegate filed a joint second amended combined motion to dismiss under section 2-619.1, presenting largely the same arguments as Fannie Mae. They attached an affidavit from NFAR's president outlining its purchase and sale of the property. He stated that during the time NFAR owned the property, it remitted sums due for real estate taxes, condominium assessments, and insurance totaling about $17,598.23. It also made improvements to the property costing $10,764. Finally, he averred that prior to receiving the section 2-1401 petition, he was not aware of any jurisdictional defect or claim to the property. They also attached an affidavit from an authorized agent of Stonegate. He described Stonegate's purchase of the property and stated that sums due for real estate taxes and insurance were being escrowed and paid by Stonegate's mortgage lender. He also stated that he was not previously aware of any jurisdictional defect or claim to the property.

¶ 13    The trial court granted the motions to dismiss, with prejudice, on September 24, 2019. Petitioners timely appealed. Fannie Mae has filed an appellee's brief on appeal, and NFAR and Stonegate have filed a separate, joint appellee's brief.

¶ 14                                II. ANALYSIS

¶ 15    Petitioners challenge the trial court's grants of respondents' motions to dismiss their section 2-1401 petition. They argue that strict compliance with statutes governing service is required and was not satisfied in this case; the defect in service was apparent on the face of the record, making section 2-1401(e) inapplicable; the doctrine of laches does not apply to petitions to vacate void judgments; their bankruptcy is irrelevant because estoppel does not apply to a motion to vacate a void judgment; orders entered without jurisdiction are void *ab initio* and must be vacated in their entirety; and their requested relief was proper.

¶ 16    A party may use section 2-1401 to challenge a default judgment as void more than 30 days after its entry. See *PNC Bank, National Ass'n v. Kusmierz*, 2020 IL App (2d) 190521, ¶ 22. We review *de novo* a judgment on a section 2-1401 petition alleging voidness based on a lack of personal jurisdiction. *Id.* ¶ 19. Similarly, we review *de novo* the dismissal of a complaint pursuant to section 2-619.1. *Wells v. State Farm Fire & Casualty Co.*, 2020 IL App (1st) 190631, ¶ 28. We may affirm the trial court's judgment on any basis appearing in the record, regardless of the trial court's reasoning. *Id.*

¶ 17    We conclude that the trial court's grant of the motions to dismiss was correct based on the application of laches. Laches is an equitable, affirmative defense that requires a showing that there was an unreasonable delay in bringing the action, and that the delay caused prejudice. *BankUnited, National Ass'n v. Giusti*, 2020 IL App (2d) 190522, ¶ 39. In other words, the defending party must show that: (1) the plaintiff did not exercise due diligence in bringing the suit, and (2) the delay prejudiced the defendant. *Federal National Mortgage Ass'n v. Altamirano*, 2020 IL App (2d) 190198, ¶ 16. Laches " 'is grounded in the equitable notion that courts are reluctant to come to the

aid of a party who has knowingly slept on his rights to the detriment of the opposing party.' " *Id.* ¶ 16 (quoting *Tully v. Illinois*, 143 Ill. 2d 425, 432 (1991)).

¶ 18 Petitioners argue that laches cannot apply because equitable considerations are not relevant in a section 2-1401 proceeding that concerns the purely legal issue of a void judgment, which may be attacked at any time. However, since the time that petitioners filed their brief, this court has issued several opinions in mortgage foreclosure cases concluding that the affirmative defense of laches may be raised in a section 2-1401 proceeding that alleges that a judgment is void. See *Ocwen Loan Servicing, LLC v. DeGomez*, 2020 IL App (2d) 190774, ¶ 25; *Kusmierz*, 2020 IL App (2d) 190521, ¶ 31; *Altamirano*, 2020 IL App (2d) 190198, ¶ 28.[1] In *DeGomez* in particular, we cited a number of earlier cases where laches was applied even where the issue involved defective service and allegedly void orders. *DeGomez*, 2020 IL App (2d) 190774, ¶ 27.

¶ 19 In all three aforementioned cases, we held that the petitioners' section 2-1401 petitions were barred by laches. In *Altamirano*, similar to this case, the petitioners argued that the judgment of foreclosure was void because the trial court lacked personal jurisdiction over them when it entered the judgment, due to a defective summons. *Id.* ¶ 8. We held that laches barred the petitioners' section 2-1401 petition, as the petitioners had actual knowledge of the foreclosure proceeding but filed their section 2-1401 petition over eight years after being served and over six years after being evicted from the premises.

---

[1] On September 10, 2020, we granted the motion of NFAR and Stonegate to cite *Kusmierz* and *Altamirano*. Petitioners did not move to supplement their brief or otherwise respond to the additional authority.

¶ 20    In *Kusmierz*, also like in this case, the petitioners alleged that the orders entered against them in the foreclosure action were void because the trial court lacked personal jurisdiction over them due to lack of proper service. *Kusmierz*, 2020 IL App (2d) 190521, ¶ 2. We held that laches applied because the petitioners waited for six years, during which time two transfers of title occurred, to file their section 2-1401 petition. *Id.* ¶ 33.

¶ 21    Finally, in *DeGomez*, again as in this case, the petitioners filed a section 2-1401 petition to vacate the judgment of foreclosure and sale on the basis that it was void for lack of personal jurisdiction because they were not properly named in the summons. *DeGomez*, 2020 IL App (2d) 190774, ¶ 2. We held that laches applied because the petitioners did not file their section 2-1401 petition until about 8½ years after receiving the summons, and after two transfers of title. *Id.* ¶¶ 30-31.

¶ 22    As in *Altamirano*, *Kusmierz*, and *DeGomez*, we conclude that dismissal of petitioner's section 2-1401 petition was proper based on the application of laches. Petitioners do not dispute that they were notified of the foreclosure through the substitute service on Sayeda on June 16, 2010. To the contrary, they subsequently filed a statement in their personal bankruptcy proceeding advising of their intent to surrender the property in satisfaction of the debt secured by the mortgage. Petitioners chose not to appear in the foreclose action, and a judgement of default was entered against them. They then waited until August 13, 2018, about eight years after Sayeda was served and over five years after the trial court approved the judicial sale of the property, to file their section 2-1401 petition. In the meantime, title to the property was transferred four times. Accordingly, petitioners did not exercise due diligence in bringing the suit.

¶ 23    The unreasonable delay also prejudiced respondents. As to all respondents, the delay allowed petitioners to claim greater damages due to the passage of time than they would have been

able to claim if they brought the petition in a timely manner, and without the burden to petitioners of costs associated with the property. Indeed, NFAR and Stonegate averred that they had paid real estate taxes, condominium assessments, and insurance, as well as additional money for improvements to the property. See *Pyle v. Ferrell*, 12 Ill. 2d 547, 555 (1958) ("a party is guilty of laches which ordinarily bars the enforcement of his right where he remains passive while an adverse claimant incurs risk, enters into obligations, or makes expenditures for improvements or taxes"). As the current owner of the property after several title transfers, Stonegate in particular would be prejudiced if the mortgage foreclosure action was allowed to be reopened. The trial court therefore did not err in granting respondents' motions to dismiss the section 2-1401 petition.

¶ 24    Petitioners argue that the application of laches is barred by the doctrine of unclean hands. Unclean hands is an equitable doctrine that prevents a party from taking advantage of its own wrong. *DeGomez*, 2020 IL App (2d) 190774, ¶ 32. The party asserting unclean hands has the burden of proof, and must provide evidence of fraud, bad faith, or lack of fair dealing. *Ashby v. Pinnow*, 2020 IL App (2d) 190765, ¶ 26. Petitioners argue that Fannie Mae and its predecessor plaintiff made representations to the foreclosure court that valid service had been made upon petitioners, and then took advantage of the void orders entered based on those representations to sell the property. Petitioners argue that the remaining respondents are parties who have profited from transfer of the property despite jurisdictional defects apparent from the record. Petitioners argue that the doctrine of unclean hands therefore applies.

¶ 25    Petitioners' argument is without merit. They cite no evidence that Fannie Mae knew that the service was allegedly improper, such that its actions could constitute fraud, bad faith, or lack of fair dealing. See *DeGomez*, 2020 IL App (2d) 190774, ¶ 33 (rejecting similar argument). The record indicates that petitioners knew that the foreclosure action was taking place, so it is unclear

what benefit Fannie Mae could have obtained from the claimed improper service. This is all the more true of NFAR and Stonegate, as they were subsequent purchasers who did not even buy the property from Fannie Mae. In sum, petitioners did not present any evidence of unclean hands, so this doctrine cannot preclude the application of laches.

¶ 26    Based on our conclusion that the section 2-1401 petition was properly dismissed based on laches, we do not address respondents' alternative arguments for dismissal.

¶ 27                                III. CONCLUSION

¶ 28    For the reasons stated, we affirm the judgment of the Du Page County circuit court.

¶ 29    Affirmed.